JOEST v. CLARENDON & ROSEDALE PACKET COMPANY.

Opinion delivered February 21, 1916.

1. CARRIERS—COMMON CARRIER.—One who operates for hire, an incline for the purpose of transferring freight from boats to cars, and who undertakes to handle the cargoes of all vessels applying, will be held to be a common carrier.

2. CARRIERS—CONNECTING CARRIERS—LOSS OF FREIGHT—RIGHTS INTER SE.—Where freight is lost through the negligence of a connecting carrier, the initial carrier, after paying the amount of the loss to the owner, may recover the amount of the damage from the connecting carrier.

3. CARRIERS—LOSS OF FREIGHT—LIABILITY.—In an action for damages against a carrier, for damages for loss of freight, due to defendant's negligence, *held*, under the evidence, that a verdict in plaintiff's favor would be sustained.

Appeal from Monroe Circuit Court; *Thomas C. Trimble*, Judge; affirmed.

STATEMENT BY THE COURT.

The Clarendon & Rosedale Packet Company sued P. H. Joest for the purpose of recovering the value of 136 sacks of rice alleged to be worth $408 and to have been lost by reason of the negligence of the defendant. The facts are as follows:

The Clarendon & Rosedale Packet Company is a corporation, and for some years had been engaged in operating a boat between Clarendon, Arkansas, and Rosedale, Mississippi. The packet company is a common carrier of freight, and on or about October 31, 1914, received a cargo of rice from W. H. Norsworthy & Co. of St. Charles, Arkansas, to be transported by it to Rosedale, Mississippi. The cargo of rice was consigned by Norsworthy.

& Co. to a warehouseman in New Orleans, and the title to the rice remained in Norsworthy & Co. The rice was to be stored by the warehouseman in New Orleans and to be held subject to the orders of the consignors. The defendant, P. H. Joest, operated an incline in the town of Rosedale, Mississippi, and the incline was used for the purpose of transporting cargoes from boats and barges to the cars of the Yazoo & Mississippi Valley Railroad Company at Rosedale. The railroad company originally built the incline but it has been operated by the defendant for a number of years. The defendant transported the cargoes of all the boats to the cars of the railroad company. The incline was built for the accommodation and use of the public, and a uniform charge was made to all the vessels plying the river for the transportation of their cargoes to the cars of the railroad company. The incline contains two tracks and as the loaded car is pulled up the incline an empty car is carried down it on the other track that it may again be loaded. There is a piece of timber at the lower end of the track to prevent the cars from going into the river, and this is called a bumper. The cars are operated by a cable fastened to a drum at the top of the incline so that when one car is pulled up the other is allowed to go down the incline.

According to the testimony of the plaintiff it was the duty of the defendant to "spot" the cars, that is to say, under the contract made with him, it became his duty to pull the railroad cars along the sidetrack to a point where they could be unloaded from the tram or incline track. A cable was wound around the drum and in "spotting" a car this cable was attached to the car and it was pulled along the railroad track into position. In this instance, while placing the car in position the cable became released and this permitted the car on the incline to go down the incline and strike the bumper with such force that 136 sacks of rice were thrown into the river. The value of the rice was $408. The car at the bottom of the incline was against the bumper and stood there until the car at the top of the incline came down and knocked the bumper

off.   This caused the cars loaded with rice to fall into the river.

According to the testimony of the plaintiff the cars were not overloaded; and the loading of the cars had nothing whatever to do with the cars knocking the bumper off of the incline and falling into the river.   According to the testimony of the defendant, however, the cars were overloaded.

It was also shown by the defendant that it was not his duty to "spot" the cars and that he only did this as a matter of accommodation; and that the pulling of the pin which released the cable was done at the request of the agents of the plaintiff.

In short, according to the testimony of the defendant he was not in any way negligent in handling the rice on the incline.

After the rice was lost the plaintiff paid to the consignors its value and instituted this action against the defendant to recover the amount so paid.

The jury returned a verdict for the plaintiff for the amount sued for and the defendant has appealed.

*Fink & Dinning,* for appellant.

1.   The testimony was legally insufficient to warrant a finding for the plaintiff.   The rice was never in the possession of defendant, and never passed out of the possession of the packet company and the acts of negligence can not be attributed to appellant.   The spotting of cars was merely an accommodation, and no part of appellant's duty.   The accident was caused solely by the carelessness of the packet company.

2.   No cause of action is shown against appellant. 5 Ark. 97; 10 *Id.* 304; 4 *Id.* 618; 12 *Id.* 126; 115 Ark. 221.

3.   Appellant was not a common carrier.   The proper person to sue is the consignee.   Hutchison on Car., § 1315. When the shipper was paid the claim was satisfied.

*Lee & Moore,* for appellee.

1.   None of the questions raised here were raised by appellant below.   105 Ark. 571.

2.   The title of the packet company was sufficient to maintain this suit.  4 Rul. Case Law, par. 306; 72 Ark. 471.

3.   The company issuing the bill of lading is liable for any loss or damage.  Act No. 270, Acts 1907.  And the initial carrier is entitled to recover from any connecting carrier or *tort feasor.*  Joest was a common carrier. 104 Ark. 44.

HART, J., (after stating the facts).   (1)   It is first insisted by counsel for the defendant that he was not a common carrier.  The evidence, however, shows that he was operating an incline for hire at the time the rice was lost and that he undertook to carry the cargoes of all vessels plying the river up the incline to the cars of the railroad company.  This made him a common carrier. *Arkadelphia Milling Co.* v. *Smoker Merchandise Company,* 100 Ark. 44.

(2)   The shipment in question was an interstate one.  The packet company was the initial carrier.  The undisputed evidence shows that the rice became worthless when it fell into the river and the initial carrier paid to the shipper the value of the rice.  It had a right then to recover from the connecting carrier the amount of damage it had been required to pay the shipper by reason of the negligence of the connecting carrier.  *K. C. & Mfs. Ry. Co.* v. *N. Y. Central & Hudson River Rd. Co.,* 110 Ark. 612; *Atlantic Coast Line Rd. Co.* v. *Riverside Mills,* 219 U. S. 186.

(3)   It was the contention of the defendant that he gave his engineer instructions not to load more than fifty sacks of rice on one car at any one time and that in disregard of these instructions the plaintiff placed ninety-six sacks of rice on one of the incline cars and that the overloading of the car caused the loss.  On this phase of the case the court instructed the jury that if the plaintiff placed ninety-six sacks of rice on one of the incline cars of the defendant and that if they further found that this was in violation of the instructions of the defendant, and that the overloading of the car was the cause or one of

the causes of the loss of the rice, that they should find for the defendant.

So, it will be seen that the contention of the defendant was submitted to the jury under as favorable instructions as he could ask.   Besides, there is no evidence tending to show that the overloading of the car was the cause of the accident.   The undisputed evidence shows that at the time of the accident one car was resting against the bumper at the foot of the incline and the other car was at the top of the incline.   The accident was caused by the removal of a certain pin and clamp that released the cable and permitted one of the cars to roll down the incline, knocking the bumper loose and thus precipitating the other car into the water.   It is the contention of the defendant that it was not his duty to ''spot'' the cars and that the pin was removed by one of the employees of the packet company for the purpose of ''spotting'' the car.

On the other hand, the testimony on the part of the plaintiff shows that the pin was removed by the engineer for the purpose of drawing the railroad car into position to be loaded from the incline car, and that it was the duty of the defendant to do this and that the removal of the pin was the cause of the accident.   This phase of the case was submitted to the jury under proper instructions.

We have carefully examined the record and find no prejudicial error in it.   The judgment will, therefore, be affirmed.