FERGUSON *v.* HUDDLESTON.

4-7564                                    186 S. W. 2d 152

Opinion delivered March 19, 1945.

*H. G. Leathers* and *Virgil D. Willis,* for appellant.

*H. V. Young, Merle Shouse* and *J. Lloyd Shouse,* for appellee.

HOLT, J.    Appellees were engaged in the livestock commission business at Flippin, Marion county, and were operating as the Flippin Sales Company.   On November 12, 1943, appellees brought suit in the Marion Chancery Court against appellant, W. A. Ferguson, a resident of Carroll county, and against G. B. Keeter and E. L. Huddleston, residents of Marion county.   Appellees alleged in their complaint, in substance, that appellant, Ferguson, purchased 69 head of cattle from them at one of their sales at Flippin, the total purchase price being $2,794.50,

but that G. B. Keeter and E. L. Huddleston, who were employed by appellees as clerks and bookkeepers at the sale, negligently and carelessly rendered a bill to appellant, Ferguson, for only $1,380.50, and that Ferguson, knowing of this error, wrongfully took the cattle for the purpose of cheating appellees and has since wrongfully refused to pay the balance due them.

In an amendment to their original complaint on January 31, 1944, appellees charged that appellant, Ferguson, and Roe Perry, a cattle dealer who lived in Missouri, had conspired to take advantage of the error as alleged in the original complaint, that Perry had no property in Arkansas, and that they further conspired to have Ferguson "put himself in the attitude of innocence," while Perry would stay out of the jurisdiction of the court. They prayed in addition to their prayer in the original complaint that appellees have a joint and several judgment against Roe Perry, appellant, W. A. Ferguson, and against G. W. Keeter and E. L. Huddleston. Personal service of summons was had on Roe Perry in Arkansas, February 2, 1944.

Appellant, W. A. Ferguson, on December 9, 1943, filed a separate answer to appellees' original complaint, in which he denied every material allegation therein and affirmatively alleged that he purchased the cattle "for Roe Perry of Independence, Mo., and that before defendant left the place of sale he turned over his check to Roe Perry with the amount left in blank to be filled in by the clerks or Roe Perry and that it was about two weeks later that he received the check through the banks; that he gave his check for the reason that Roe Perry was not known at the sale place and as an accommodation to the said Roe Perry and that Roe Perry later reimbursed him in the sum of $1,380.50, the amount of the check as filled out either by the clerks or Roe Perry; that if the cattle were removed they were removed by Roe Perry and not the defendant; that defendant had no interest in the transaction except acting to accommodate Roe Perry."

G. B. Keeter and E. L. Huddleston (defendants below) filed separate answer admitting the allegations of

appellees' complaint and amendment thereto, and in a cross-complaint prayed that they have "judgment over against the defendant in cross-complaint, W. A. Ferguson, for any sum or sums which they or either of them may be caused to expend because of the primary judgment of the court herein." Appellant, Ferguson, in his answer to the cross-complaint of E. L. Huddleston and G. B. Keeter interposed a general denial and further alleged that E. L. Huddleston and G. B. Keeter "are members of the plaintiff Sales Company and have been since its organization and that they have conspired with said plaintiffs in original complaint, to be named defendants, as agents in Marion county, for the purpose of obtaining service on him (appellant, Ferguson) in Carroll county."

When the cause was reached for trial, Roe Perry filed motion to quash summons as to him, whereupon appellees entered a non-suit as to Perry.

Prior to the trial, the court, on March 8, 1944, entered an injunctive order restraining appellant, Ferguson, from selling and disposing of any of his properties, but permitted him to enter into a supersedeas bond in the amount of $2,000, conditioned upon appellant's performing the final orders and judgment of the court. This bond was executed and filed with appellant as principal and Paul Ferguson, T. J. Davis and J. B. Hale as sureties.

Upon a trial, the court found for appellees against all of the defendants, Ferguson, Keeter and E. L. Huddleston, and the sureties on appellant's supersedeas bond, in the amount of $1,333, and in the event G. B. Keeter and E. L. Huddleston were required to pay any part of the judgment, that they have judgment over against Ferguson and his bondsmen, for such amount as G. B. Keeter and E. L. Huddleston might be required to expend, and entered a decree accordingly. This appeal followed.

For reversal, appellant says: "1. That the decree is not supported by a preponderance of the evidence. 2. That no judgment should have been rendered against appellant because the pleadings and evidence did not dis-

close a joint liability on the part of appellant and his co-defendants below, G. B. Keeter and E. L. Huddleston, and since there was no judgment decreed against G. B. Keeter and E. L. Huddleston, summoned as defendants in Marion county, no judgment could have been decreed against appellant who was domiciled in Carroll county and served with summons there."

## 1.

The material facts are practically undisputed. Appellant was a cattle dealer residing in Carroll county. Roe Perry, who also dealt in livestock, resided in Independence, Missouri. These men had known each other for some time and were friends. They attended a cattle sale of appellees at Flippin, Arkansas, and appellant, W. A. Ferguson, bought 73 head of cattle at this sale. G. B. Keeter and E. L. Huddleston were employed by appellees as bookkeepers and clerks in conducting the sale. In rounding up the cattle, purchased by appellant, following the sale, it developed that a small number could not be identified for the reason that their identification tags had been lost. In keeping the records of the sale, the bookkeepers, Huddleston and Keeter, erroneously failed to carry forward the total sales shown at the bottom of the first sales sheet, in the amount of $1,414, to the top of the second sales sheet, and appellant was charged $1,380.50 for the cattle which he purchased whereas the amount due from appellant was approximately $2,794.50. Appellant gave his check to appellee for $1,380.50. After the sale, Roe Perry took the cattle away in trucks to the home of appellant in Carroll county. Perry delivered the check in payment for the cattle, which check had first been signed by appellant, Ferguson, and the amount, $1,380.50. filled in by Perry. Appellant says: "The parties are agreed that Mr. Perry was a total stranger and that appellant actually did the bidding and that Mr. Perry did the settling with a check given in blank by appellant, who was well-acquainted with the salespeople and whose dealings theretofore had been satisfactory with appellees."

It was admitted that appellant, Ferguson, did the bidding and buying. There was evidence that when Perry was removing the cattle an effort was made to substitute cattle for those from which the numbers had been lost, but that Perry refused, giving as his reason, that he was acting for "another man" (appellant). While there was evidence on the part of appellant that tended to show he was buying the cattle in question for Perry and acting as Perry's agent and not as principal, after a careful review of all the testimony, we think the preponderance of the evidence is to the contrary and supports the court's finding, the effect of which was that appellant, Ferguson, was acting as principal in the purchase of the cattle and not as agent for Perry, or that, if in fact, acting as agent for Perry that the preponderance of the evidence shows that he failed to disclose his principal to appellees and therefore became personally liable for the cattle purchased. The general rule is stated in *Drake* v. *Pope,* 78 Ark. 327, 95 S. W. 774: "It is well-established that a broker cannot be held personally liable to the third party upon a contract for a disclosed principal; and if the third party knew, or had sufficient knowledge to create an inference, that the broker was acting for another, then the broker is not liable. But if he does not disclose his principal nor the fact that he is acting as a broker, but deals personally, then he is liable, although in fact he acted as broker, and his principal may be held after disclosure, but this does not prevent his personal liability if the third party elects to hold him instead of his after-disclosed principal. 2 Clark & Skyles on Agency, § 786; *Shelby* v. *Burrow,* 76 Ark. 558, 89 S. W. 464, 1 L. R. A., N. S., 303, 6 Ann. Cas. 554."

## 2.

Nor can we agree with appellant's second contention, *supra.* Appellant was content to file a separate answer to the complaint, interposing a general denial, and thus joined issues against appellees. He filed no motion to quash service of summons on appellant in Carroll county, but submitted to a trial of the issues in Marion county, where there was a decree against his co-defendants,

Keeter and Huddleston, along with the decree against appellant. The decree against appellant was therefore proper and binding. [Sec. 1400, Pope's Digest.]

It is also our view that the court correctly decreed that in the event Keeter and Huddleston should be required to pay the amount awarded appellee, that they be reimbursed by appellant, since the undisputed testimony shows that appellant alone benefitted by the error in the amount which appellant was due for the cattle purchased and Keeter and Huddleston, the clerks, in no way profited thereby.

Finding no error, the decree is affirmed.