**FIDELITY AND CASUALTY COMPANY OF NEW YORK, A corporation, and General Accident, Fire and Life Assurance Corporation, Ltd., Plaintiffs,**

v.

**J. A. JONES CONSTRUCTION COMPANY, A corporation, Defendant.**

**No. LR 61 c 17.**

United States District Court
E. D. Arkansas, W. D.
Nov. 22, 1961.

Honduras court has or has not taken jurisdiction and rendered an order.

Cockrill, Laser & McGehee, Rose, Meek, House, Barron, Nash & Williamson, Little Rock, Ark., for plaintiffs.

Mehaffy, Smith & Williams, Little Rock, Ark., for defendant.

YOUNG, District Judge.

This is an action for indemnity. Plaintiffs are insurance carriers subrogated to the rights of the architectural firm which prepared plans for and supervised the construction of a J. C. Penney store at Sixth and Main Streets, Little Rock, Arkansas. Defendant was the general contractor for the job. The action arises from a cave-in of an excavation wall on March 4, 1957, for which the architectural firm was held liable to four of defendant's employees killed or injured thereby. See Erhart v. Hummonds, 334 S.W. 2d 869 (Ark.1960). Defendant, before answering, has moved for summary judgment. Fed.R.Civ.P. 12(b), 28 U.S.C.A.; 2 Moore, Federal Practice, § 12.09 [3].

 Defendant's motion for summary judgment, though primarily asserting a failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b) (6), also alleges that plaintiffs' cause of action is barred by the statute of frauds and by " * * * the statute of limitations and/or laches." As this is not an action to charge the defendant upon its special promise to answer for the debt, default, or miscarriage of another, but rather for its own conduct, it is not an action barred by the statute of frauds. As to the action being barred by statutes of limitation or by laches, it may be noted that normally the statute of limitations runs in favor of the principal obligor, where indemnity is owed, from the time when payment of the obligation is made. Restatement, Restitution § 77 (1937). Here the cave-in out of which this action arises occurred March 4, 1957, the actions by, or on behalf of, the four employees were consolidated and tried May 6–9, 1959, affirmed on appeal May 2, 1960 (rehearing denied May 30, 1960), and this action for indemnity filed in this court January 24, 1961. Defendant admits that a demand was made upon it to defend the four suits prior to their trial in May 1959, and defendant's attorney states in an affidavit attached to the motion for summary judgment that he "maintained a comprehensive file in this case throughout the proceedings in the Circuit Court of Pulaski County and subsequent appeal to the Arkansas Supreme Court" which discloses that defendant was apprised of the four suits from the time of the filing of the initial suit in the latter part of 1957. Defendant makes no allegation of inexcusable delay in the commencement of this action, nor does it allege prejudice on it as the result of any such delay. The defense of limitations or of laches is therefore not well taken.

I

Defendant's assertion that the complaint fails to state a claim upon which relief can be granted is based upon two facts; there is no contract between defendant and the architectural firm to whose rights these plaintiffs are subrogated, and the four workmen to whom the architectural firm was held liable were defendant's employees and received Workmen's Compensation Act benefits from defendant's compensation insurance carrier. Not having specifically entered into a contract having an indemnity clause, defendant insists that the Arkansas Workmen's Compensation Act exclusively measures its responsibility and liability, directly or indirectly, for injury to its employees.

The question thus presented—whether an employer who has paid compensation act benefits to an employee must indemnify a third person held liable for the employee's injury, where, as between the third person and the employer, the injury was the fault of the employer— has received conflicting answers from American courts. With apparent unanimity courts have held that the policy of workmen's compensation coverage protects employers who have paid compensation from actions to enforce contribution among tortfeasors, but have found nothing that prevents the enforcement against such an employer of his express indemnity contract. 2 Larson, Workmen's Compensation §§ 76.21, 76.40 (1952); Note, 8 Ark.L.Rev. 512 (1954); accord, C & L Rural Elec. Co-op. Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337

(1953). Where the action is for indemnity from an employer who has not given an express indemnity contract, the cases are not in agreement, though upon analysis a general agreement may be detected among the majority of these cases.

Thus, where the action for indemnity is among parties whose only legal relationship is that of joint feasors, indemnity as well as contribution is denied. Slattery v. Marra Bros., Inc., 186 F.2d 134, 138–139 (2d Cir.1951) (L. Hand, J.,); Peak Drilling Co. v. Halliburton Oil Well Cementing Co., 215 F.2d 368 (10th Cir. 1954), affirming Calvery v. Peak Drilling Co., 118 F.Supp. 335 (W.D.Okla. 1954). But "(i)n the absence of an express contract the obligation to indemnify may arise from undertakings implicit in relationships assumed." Atella v. Gen. Elec. Co., 21 F.R.D. 372, at 374 (D. R.I.1957); e. g., Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (On rehearing) (Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.); General Elec. Co. v. Moretz, 270 F.2d 780 (4th Cir. 1959) (Tennessee Workmen's Compensation Act, I.C.A. § 50–901 et seq.); American Dist. Telegraph Co. v. Kittleson, 179 F.2d 946 (8th Cir.1950) (Iowa Workmen's Compensation Act, I.C.A. § 85.1 et seq.) (Riddick, J.); Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N. E.2d 567 (1938) (New York Workmen's Compensation Act, Workmen's Compensation Law, § 1 et seq.). See 2 Larson, supra, § 76.43; Note: Third Party's Right to Contribution and Indemnity Under Workmen's Compensation in Tenn., 13 Vand.L.Rev. 772, 778–79 (1960). It is, then, only a partial defense to assert a lack of an express contract containing

an indemnity agreement, for neither at common law nor under workmen's compensation acts is indemnity made to depend upon the existence of such an express contractual clause. Restatement, Restitution § 76 (Comment b.) (Common law); Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, 350 U.S. at 132–133, 76 S.Ct. at 236–237; 2 Larson, supra, §§ 76.43, 76.44(a), (b) (Workmen's compensation acts).

## II

Is there, then, such a breach of duty [1] by defendant to be found in the facts related in this record as will raise at law an obligation on defendant's part to indemnify these plaintiffs?

In February of 1957 defendant, J. A. Jones Construction Company, contracted with one Seventh & Main Realty Company to construct for the Realty Company a building to be located at Sixth and Main Streets, Little Rock, Arkansas; the building was to be constructed according to specifications and drawings prepared by the architectural firm of Erhart, Eichenbaum and Rauch of Little Rock, and was to serve, upon completion, as a store for the J. C. Penney Company. As the Penney Company declined to supervise construction of the building, the architectural firm was retained by the owners to perform this function. As supervisors of construction they exercised the authority of their principal, Seventh & Main Realty Company, on behalf of, and in the interest of, the principal, but the contract between defendant and the Realty Company gave them a somewhat greater authority than merely that of an agent, for it provided in several instances that the methods of construction to be selected, or the manner of performance thereof, was subject not only to the architects' approval, but that

1. In the view that I take of this case it is unnecessary to decide whether this "duty" may arise only because of a contractual obligation undertaken, which by its nature may be said to warrant its faithful performance, or if this "duty" may also arise in a situation in which the negligence of the employer may be said to be a tort against a third party, independent of the tort thereby committed against an employee. See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, 350 U.S. 131–134, 76 S.Ct. at 236–237; Slattery v. Marra Bros., Inc., supra, 186 F.2d 138–139.

the architects might direct the contractor in the performance of his contract, specifying such methods and procedures as they thought proper and necessary. The contractual provisions set out in the complaint are as follows:

"General Conditions:

"All work shall be executed in strict conformity with all laws and regulations of Federal, State, County, or City, authorities, and/or local utility companies having jurisdiction at the location of this work. None of the terms or provisions of the drawings or this specification shall be construed as waiving or cancelling any said laws and regulations. (GC 04).

"Construction Equipment—Except and unless otherwise specified, each Contractor shall furnish at his own cost and risk, all tools, hoists, derricks, apparatus, including power for same, scaffolding and all temporary work, material and supplies necessary for expeditious prosecution of this contract. (GC 14).

"Responsibilities of Contractor— The General Contractor shall take over and assume all responsibility for the entire premises. He shall erect such protection as may be required, or as directed by the Architect, maintain same, and maintain any existing protection, all in accordance with the governing laws, rules, regulations and ordinances. All such protection unless of a permanent nature, shall be removed from the premises when directed.

"Each Contractor shall be responsible for his own work and every part thereof, and all work of every description used in connection therewith. He shall specifically assume, and does assume, all risks of damage or injury from whatever cause to property or persons used on or in connection with his work, and of all damage or injury from any causes to property wherever located resulting from any action or operation under this particular Contract or in connection with his work under this Contract, and to undertake and promise to protect and defend the Owner against all claims on account of any such damage or injury. (GC 15).

"Supervision—Each Contractor shall keep on his work, during its progress, a competent superintendent, and any necessary assistants, all satisfactory to the Architect * * (GC 17).

"Specifications:

"Earthwork, Shoring and Underpinning—

"1–01 *Scope:* The work required under this section of the specifications consists of furnishing of all labor, materials and equipment, and of performing all operations in connection with excavation, filling and backfilling for building construction, and installation of necessary sheet piling, shoring and underpinning, complete, in strict accordance with this section of the specifications and applicable drawings.

"1–02 *Excavation:* a. *General:* Excavation will not be classified, and shall include all materials encountered in whatsoever nature, and no extra allowance in cost will be made in connection therewith. The excavation shall conform to the dimensions and elevations shown on the drawing, leveled off at exact depth required. Widths of excavations shall be sufficient to provide for easy placing and removal of forms, where form work is indicated, and for installation of such protective shoring and bracing as may be necessary to prevent caving of banks * * *. Undercutting will not be permitted.

"c. *Shoring and Sheet Piling:* This Contractor shall do all shoring necessary to maintain the banks of excavations, to prevent sluffing (sic) or caving, and to protect workmen, and shall repair or restore any damage that may occur in connection

therewith, at his own expense. The type of sheet piling required shall be optional with the Contractor, the only requirement being it shall be adequate for the purpose intended. Should the Contractor so elect, he may use the sheet piling as exterior forms for concrete work, placing the concrete directly against the piling surface and leaving the piling in place. Sheet piling shall be driven so as to maintain true alignment and braced if required.

"d. *Inspection:* Upon completion of excavation, and prior to commencement of concrete work, excavations will be inspected by the Architect to insure that suitable earth foundation conditions have been obtained, and that compliance with the requirements, the specifications and the drawings have been maintained. No concrete shall be placed until this inspection has been made and approval of the Architect has been obtained."

It is alleged that the defendant, in excavating for the basement and footings of the building, made an almost vertical cut some seventeen feet in depth along the east property line, parallel with and contiguous to the alley which lay to the rear of the site. On Thursday, February 28, 1957, approximately one month from the beginning of construction work, defendant erected bracing to support the side of the completed excavation, but, as erected, the bracing was considered by the architects to be inadequate; an official of the defendant construction company was notified that Thursday at his Shreveport, Louisiana, office by the architects that the bracing presented a hazard and that defendant's superintendent on the job was incompetent; it is further alleged that defendant immediately sent a representative to replace the superin-

tendent then on the job, that the representative arrived on the job the following day, Friday, toured the construction site with the architects, was shown the inadequate bracing, and agreed to remedy the condition as the first order of business on the next work day, Monday, March 4, 1957.[2]

The complaint alleges that the defendant's representative failed to correct the inadequate bracing as the first order of business on Monday, but rather, that he had his crew remove part of the inadequate bracing and begin the digging of a one-foot deep trench at the base of the excavation wall. It is alleged that it had rained over the weekend prior to that Monday, so that the excavation side was more unstable and dangerous than it previously had been. In the cave-in that occurred that Monday morning, three of defendant's employees working at the base of the excavation side were suffocated, while another was seriously injured. These four men were covered by Workmen's Compensation insurance, and these benefits were paid.

Four suits were brought against the Architects for the injury and death of these four workmen, but, as previously noted, they were consolidated for trial. It is alleged that the complaint in each action alleged negligence on the part of the Architects in the following particulars: failing to direct the erection of protective bracing required by the construction contract, failing to require compliance with a Little Rock safety ordinance concerning excavation, failing to require compliance with the plans and specifications, failing to properly prepare the plans and specifications, failing to properly inspect the dangerous condition and to take the necessary safety steps a proper inspection would have required, and, lastly, that the architects' inspector drove his automobile down the alley

2. The statement of facts by the court in Erhart v. Hummonds, supra, indicates that the defendant was informed by the architects on Thursday that unless a new superintendent was put on the job they would ask the owner to stop work im- mediately, as allowed by the contract. There was also testimony that the east wall footings were poured on Friday afternoon, a step which would have required the architects' approval under Section 1-02(d) of the contract specifications.

though he knew of the improper bracing, of the weekend rain, and of the danger of a cave-in being caused by traffic vibration and vehicle weight. As the case was presented to the jury, all save the last two were apparently abandoned, for the issues submitted were the architects' negligence in failing to stop all construction work until the defective bracing was corrected, and the negligence of their inspector in driving down the alley. Erhart v. Hummonds, supra, 334 S.W.2d 874 (dissent). It may be noted that the complaint in this case denied that the architects' inspector did drive down the alley and so cause the cave-in.

■ ■ Had the four suits been brought against the building owners and successfully maintained, their rights to indemnity against defendant construction company under the express contractual language would be clear, as would their right even in the absence of such indemnity provision. See Burris v. American Chicle Co., 120 F.2d 218, 219 (2d Cir.1941). Is the result to be different because the suits were brought against a party who represented the owners and saw to the correct performance of defendant's obligation to them? Clearly not, for the obligation of indemnity is not restricted by formal legal relations; the obligation " * * * applies where two or more persons are subject to a duty to a third person either as joint promisors or otherwise, under such circumstances that one or more of them, as between themselves, should perform it rather than the other." Restatement, Restitution § 76 (Comment b). As I have detailed, plaintiffs' cause of action for indemnity is based upon defendant's alleged failure to properly perform its construction contract (see Restatement, Restitution § 95), both by its failure to

abide by the contract requirements and specifications and by its failure to conform to the architects' directions, and defendant's promises to comply with the safety provisions of its contract and to conform to the directions of the architects in the performance of that contract, as well as the specific promise to " * * * do all shoring necessary to maintain the banks of excavations, to prevent sluffing (sic) or caving, and to protect workmen * * ", are warranties of competent, workmanlike performance. See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, 350 U.S. 133–134, 76 S.Ct. 237; Hugev v. Dampskisaktieselskabet International, 170 F.Supp. 601, 607—608 (S.D. Calif.1959). Moreover, the architects, to whose rights these plaintiffs are subrogated, may, in addition—having regard to the purposes of the contract in question and the relationship of all parties— be said to be brought " * * * into the zone of modern law that recognizes rights in third-party beneficiaries. Restatement, Law of Contracts, § 133." Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413 (1959).

■ Whether plaintiffs' right to indemnity be said to rest upon the commission of a tort by defendant against the architects—a tort separate from that committed against his own employees and within the exclusive coverage of the Workmen's Compensation Act as to those employees—or whether plaintiffs' right to indemnity be said to rest upon third party beneficiary rights of the architects to the defendant's contract with the building owners [3], or whether their right to indemnity be said to rest upon the breach of defendant's warranties of competent, workmanlike performance [4], the

---

3. This contract contained defendant's general promise to assume " * * * all risks of damage or injury from whatever cause to property or persons used on or in connection with his work, and of all damage or injury from any cause to property wherever located resulting from any action or operation under this particular Contract or in connection with his work under this Contract * * *."

4. Damage to the architects as a result of defendant's breach of these warranties was within the area of foreseeable risk. As these warranties are "comparable to a manufacturer's warranty of the sound-

result reached is the same—plaintiffs' complaint states a cause of action upon which relief could be granted.

### III

■ The discussion to this point has proceeded upon the assumption that as the Arkansas Supreme Court has not passed upon this precise question, the law of Arkansas, which this court applies where jurisdiction is based upon diversity of citizenship, as it is here, is to be presumed to be that generally followed and applied elsewhere in similar circumstances. As noted, the Arkansas Supreme Court has held that contribution will not lie against a compensation-paying employer, but that indemnity upon an express indemnity agreement can be maintained. C & L Rural Elec. Co-op. Corp. v. Kincaid, supra, and in so holding it is in accord with the majority of holdings on these points. Note, 8 Ark.L. Rev. 512 (1954). While perhaps a majority of courts have refused indemnity where the right asserted was based upon an active-passive, or primary-secondary, theory of tort negligence liability [5], so that the exclusive remedy provisions of the workmen's compensation laws in question might be said to have abrogated the common law where the party actively or primarily liable has paid compensation to the injured party [6], still the decision in this case may be based upon other grounds.

While no Arkansas cases are to be found which apply a primary-secondary theory of indemnity, Magness v. St. Paul Mercury Indemnity Co., (unreported) (W.D.Ark.1956); and see Citizens Coach Co. v. Wright, 228 Ark. 1143, 1150, 313 S.W.2d 94 (1958) (Order on motion to clarify), those cases which do concern indemnity may fairly be said to be generally in accord with the majority of cases elsewhere, and to have accorded indemnity where the obligation arose "from undertakings implicit in relationships assumed." See, Ferguson v. Huddleston, 208 Ark. 353, 186 S.W.2d 152 (1945); Voss v. Arthurs, 129 Ark. 143, 148, 195 S.W. 680 (1917) (dictum); Jo-

ness of its manufactured product", Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, 350 U.S. at 133–134, 76 S.Ct. at 237, plaintiffs might maintain their action whether or not the architects were in privity to the defendant's contract with the owners. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 (1916) (Cardozo, J.); see Ford Motor Co. v. Fish, 335 S.W.2d 713 (Ark.1960); cf. BucTon Construction Co. v. Carlson, 225 Ark. 208, 280 S.W.2d 408 (1955); see generally, Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820 (1949); Note, 13 Ark.L. Rev. 386 (1959); Prosser, Recent Developments in the Law of Negligence, 9 Ark.L.Rev. 81, 87–89 (1954).

"The * * * action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of [defendant's contract] * * *." Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra.

5. E.G., McCormick v. United States, 134 F. Supp. 243 (S.D.Tex.1955); Calvery v. Peak Drilling Co., 118 F.Supp. 335 (W.D.Okla.1954), aff'd sub nom., Peak Drilling Co. v. Halliburton Oil Well Ce-

menting Co., 215 F.2d 368 (10th Cir. 1954); Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 75 S.E. 2d 768 (1953). See also Slattery v. Marra Bros., Inc., 186 F.2d 134, 138–139 (2d Cir.1951).

6. It should be pointed out that there is a difference in substance often obscured by the use of active-passive, primary-secondary terminology. The terms may be used in situations where the parties are in pari delicto, though not at fault in the same degree. See the discussion in Slattery v. Marra Bros., Inc., supra. More properly the terms may be used to indicate that a person has become subject to tort liability without personal fault because of the unauthorized and wrongful conduct of another. See Restatement, Restitution § 96; Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R.2d 865, at 876 (1954); 2 Larson, supra, § 76.42. The use of this terminology in the first sense by the cases cited in Note 5 indicates another way of refusing contribution. In the latter sense the terminology is descriptive of the relationship of the parties; it is not a statement of the legal reasoning underlying indemnity.

est v. Clarendon & Rosedale Packet Co., 122 Ark. 353, 183 S.W. 759 (1916). As early as Hill v. Wright, 23 Ark. 530 (1861), the Court recognized this, remarking that " * * * the obligation of principals to reimburse the securities the money paid by them, is not founded on the bonds which securities give for their principal, but on the express contracts of indemnity which the parties make, *or upon the implied promise raised by the payment of money for another at his request.*" Id. at 532 (emphasis added). The principle enunciated by § 95 of the Restatement of the Law of Restitution [7] makes no radical innovation in the law of Arkansas, nor is there reason to suppose that the Arkansas courts would not allow indemnity in this instance under one of the theories previously explained.

Nor does the wording of the Arkansas Workmen's Compensation Act require a different result. Ark.Stats.1947, § 81–1304 provides:

"The rights and remedies herein granted to an employee subject to the provisions of this act, on account of injury or death, shall be exclusive of all other rights and remedies *of such employee,* his legal representative, dependents, or next of kin, *or anyone otherwise entitled to recover damages from such employer on account of such injury or death * *.*" (Emphasis added).

On its face the act does not cover liability based upon grounds independent of the injury to employee, and similar language in other compensation acts has been held to be no bar to a right to indemnity. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, 350 U.S. at 131, 76 S.Ct. at 236; Lunderberg

v. Bierman, supra, 63 N.W.2d at 360–365, 43 A.L.R.2d at 873–877. Compare Ward v. Denver & R. G. W. R. Co., 119 F.Supp. 112 (D.Colo.1954), with American District Telegraph Co. v. Kittleson, supra.

IV

■ One further contention by defendant remains to be considered. As noted, the issues submitted to the jury in Erhart v. Hummonds were the negligence of the architects in failing to stop all construction work until the defective bracing was corrected and the negligence of their employee in allegedly driving his car down the alley just prior to the cave-in. As the jury returned a general verdict against the architects it is impossible to say whether their verdict was based on the first or second ground, or both. Defendant contends that these plaintiffs are " * * * bound by all findings without which the judgment could not have been rendered, and that, if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained." Annotation, 24 A.L.R.2d 329, 330 (1952). The alleged negligence of the supervisor is not a jury "finding without which the judgment could not have been rendered," for the judgment could stand upon the alternate issue. In such a situation plaintiffs' right to indemnity (and conversely, defendant's obligation to indemnify) must be determined by additional findings of fact. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

The motion for summary judgment is denied.

---

7. § 95. Where a person has became (sic) liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.