# PICKENS-BOND CONSTRUCTION COMPANY AND AETNA CASUALTY & SURETY CO. v. NORTH LITTLE ROCK ELECTRIC COMPANY

5-5352                                    459 S. W. 2d 549

Opinion delivered November 9, 1970

*Smith, Williams, Friday & Bowen;* By: *William S. Sutton* and *Max C. Mehlburger,* for appellants.

*Wright, Lindsey & Jennings;* By: James D. Storey, for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Pickens-Bond Construction Company and its liability insurance carrier Aetna Casualty & Surety Company sought to recover from appellee North Little Rock Electric Company all sums paid by the carrier in settlement of personal injury claims of an employee of appellee. Pickens-Bond was the general contractor on a construction job, and appellee was the electrical subcontractor. The employee was injured while performing work for this subcontractor on the job site. He was burned by explosion of liquid fuel obtained from a heating stove. The fuel, its container and the stove all belonged to Pickens-Bond. The can of fuel was near the heating stove when the explosion occurred. The only persons in the vicinity of the stove and fuel can at the time were North Little Rock Electric Company employees, although Pickens-Bond employees were working on the job site on that day. While specified employees of Pickens-Bond had the responsibility of refueling the stove from time to time, employees of other subcontractors occasionally put fuel in the stove. The identity of neither the person who last filled the stove before the explosion, nor of the one who placed the fuel can in proximity to the stove, is known.

Appellants' suit was based upon an indemnity clause contained in the contract between Pickens-Bond

and North Little Rock Electric Company. The circuit court granted appellee's motion for summary judgment. It found the agreement too broad in its terms. That court held that the clause should not be construed to indemnify against the negligence of the indemnitee because this intention is not expressed in unequivocal words. We reverse the judgment because we feel that a question of fact must be determined before the question of coverage of the negligence of Pickens-Bond can be considered. The clause in question follows:

> Party of the second part shall be responsible for his own work and every part thereof, and all of the work of every description used in connection therewith. He shall specifically and distinctly assume, and does assume, all risks of damage or injury from whatever cause to property or persons used or employed on or in connection with his work, and of all damage or injury from any cause to property wherever located, resulting from any action or operation under this sub-contract or in connection with his work, and undertake and promise to protect and defend the party of the first part against all claims on account of any such damage or injury.

Appellants contend that the subcontractor, by this clause assumed all risk of injury to his employees from any cause whatever, including the negligence of the general contractor. Appellee contends that the indemnity does not cover injuries resulting from negligence of the general contractor. It contends that the indemnity is only effective against injuries to employees resulting from any action or operation under the subcontract in connection with the work thereon. In order to demonstrate these conflicting constructions we set out the two versions of appellee's undertaking.

| APPELLANTS' VERSION | APPELLEE'S VERSION |
|---|---|
| He shall specifically and distinctly assume all risks | He shall specifically and distinctly assume all risks |
| (1) of damage or injury from whatever cause to | (1) of damage or injury from whatever cause to |

property or persons used or employed (a) on or (b) in connection with his work,

and

(2) of all damage or injury from any cause to property wherever located, resulting from any action or operation under this subcontract or in connection with his work,

and undertake and promise to protect and defend the [general contractor] against all claims on account of any such damage or injury.

property or persons used or employed on or in connection with his work

and

(2) of all damage or injury from any cause to property wherever located

resulting from any action or operation under this subcontract or in connection with his work, and undertake and promise to protect and defend the [general contractor] against all claims on account of any such damage or injury.

It will readily be seen that if appellee's construction is adopted there are many unnecessary words in the clause. A contract of indemnity is to be construed in accordance with the rules for the construction of contracts generally. *Anthony* v. *Louisiana and Arkansas Railway Co.,* 316 F. 2d 858 (8th Cir. 1963), cert. denied, 375 U. S. 830, 84 S. Ct. 74, 11 L. Ed. 2d 61 (1963), aff'g 199 F. Supp. 286 (W. D. Ark. 1961) involving Arkansas contract and Arkansas law; 41 Am. Jur. 2d 697, Indemnity § 13; 42 C. J. S. 574, Indemnity § 8. In construing a contract, the courts must endeavor to give meaning and effect to every word and may discard words as surplusage only when the intention of the parties clearly makes them such. *Miller* v. *Dyer,* 243 Ark. 981, 423 S. W. 2d 275; *Fowler* v. *Unionaid Life Ins. Co.,* 180 Ark. 140, 20 S. W. 2d 611. Repetition of the preposition "of" in the two "damage" clauses clearly indicates a parallel of two separate and distinct types of damage or injury: first, to persons or property used on or in connection with the subcontractor's work, from whatever cause; and second, to property, wherever located,

from any cause resulting from any action or operation under the subcontract or in connection with the work of the subcontractor. Then, if appellee is correct, there would have been no necessity for repetition of the words damage or injury. Furthermore, the word "property" need not have been repeated. If there be any doubt about the surplusage of the above words, we are sure that the words "in connection with his work" would not have been repeated if the parties intended the result appellee urges.

Surely if the parties had intended to contract according to appellee's version the opening clause would have read:

> He shall specifically and distinctly assume all risks of damage or injury to persons used or employed on the work or to property, wherever located, from any cause resulting from any action or operation under this subcontract or in connection with his work * * *

The contrast between the words "from whatever cause" and "from any cause" also indicates that the modifying clause "resulting from any action or operation under this subcontract or in connection with his work" is intended to limit the latter phrase only and serves as a contrast of "whatever cause" where persons and property "used or employed on or in connection with his work" are concerned with "any cause" where "property wherever located" is involved.

We cannot agree with appellee's construction of the contract. It seems clear to us that appellants' version is the correct construction. We find no ambiguity in the language of the contract, which would cause us to resort to rules of construction to ascertain the meaning of its words. Thus, for example, we are not called upon to construe the contract most strictly against Pickens-Bond, who apparently prepared it. *Miller v. Dyer*, 243 Ark. 981, 423 S. W. 2d 275; *Coffelt v. Decatur School District*, 212 Ark. 743, 208 S. W. 2d 1; *Stoops v. Bank of Brinkley*, 146 Ark. 127, 225 S. W. 593.

Our construction of the contract, however, does not completely foreclose appellee's argument that, in the absence of specific words requiring indemnification of Pickens-Bond against liability for its own negligence, the contract cannot bind appellee to this liability. There is an important factual problem confronting us before we can reach this argument of appellant. In this case, the language "damage or injury from whatever cause" is about as broad and comprehensive language as is likely to appear in such a contract. A literal construction of it would certainly include the negligence of the indemnitee. We have stated our position on a contract such as this in *Hardeman* v. *Hass Company*, 246 Ark. 559, 439 S. W. 2d 281. We said:

> The precise question is whether this indemnity provision obligates the subcontractor to indemnify the prime contractor for damages arising out of the negligence of prime contractor which was the proximate cause of Turpin's injuries. The intention of Hass to so obligate itself must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed. 41 Am. Jur. 2d, Indemnity § 15. Where an injury is caused by the sole negligence of the indemnitee many courts, in interpreting the indemnity contract, predicate their interpretation on the theory that such a liability would be unusual and harsh; consequently, the courts endeavor to relieve the indemnitor of liability to the negligent indemnitee. 175 A. L. R., p. 32, § 18.

The burden of demonstrating the nonexistence of questions of fact lay upon appellee. *Mason* v. *Funderburk*, 247 Ark. 521, 446 S. W. 2d 543. It has failed to discharge this burden. In determining this point the evidence must be liberally construed in favor of the party opposing the motion, all doubts resolved against the judgment and all presumptions and inferences resolved against the movant. *Wilson* v. *McDaniel*, 247 Ark. 1036, 449 S. W. 2d 944; *Mason* v. *Funderburk, supra.*

We cannot say as a matter of law that the injuries of Cornelius were caused, either wholly or in part, by

negligence of Pickens-Bond. If the negligence of Pickens-Bond was not a proximate cause of these injuries, then it seems clear that the resulting damages come within the coverage of the indemnity clause. In that event, it would be unnecessary to determine whether the agreement is as comprehensive as appellants contend.

Because there is an unresolved fact question, we must remand the case for further proceedings. Since the question posed by appellee will arise if it be shown that the negligence of Pickens-Bond was a proximate cause of the injuries to Cornelius, we will consider appellee's argument as to the effect of the lack of express words in order to guide the trial court and the litigants. The question has given us a great deal of difficulty. We find no ruling precedent in our own jurisdiction, and a wide divergence of authority on this subject. Decisions based upon public policy considerations have little bearing here, because of the position we took in the *Hardeman* case. By the same token, we disregard those factors which would govern if Pickens-Bond were a public utility, a common carrier, a public service agency or the conductor of any business coupled with a public interest.

It seems that a majority of decisions in other jurisdictions support the rule that mere general, broad and seemingly all-inclusive language is insufficient to create a binding agreement to indemnify a party against the consequences of his own negligence. See 13 Am. Jur. 2d 132, Building and Construction Contracts § 141; 41 Am. Jur. 2d 699, Indemnity § 15; Annot. 175 A. L. R. 8 (1948). This rule arises from the natural aversion of the courts to hold one liable for the acts or omissions of another over whom he has no control. It also has its basis in the rule of strict construction, which probably should have no application where there is no ambiguity.

Some of these cases are based upon clauses somewhat different from the clause at hand, as we have construed it, in that the claim for damage or injury must

have resulted from the performance, nonperformance or malperformance of the contractual undertaking of the indemnitor. See, e. g., *Glens Falls Indemnity Co.* v. *Reimers,* 176 Ore. 47, 155 P. 2d 923 (1945). Others merely hold that indemnity agreements containing broad, general language such as that employed here do not cover losses caused *solely* by the negligence of the indemnitee. See, e. g., *Southern Pac. Co.* v. *Layman,* 173 Ore. 275, 145 P. 2d 295 (1944) and cases cited therein.

There are also holdings that general terms are sufficient where the injuries result from concurring negligence of indemnitor and indemnitee, even though not requiring indemnity where the sole cause is the indemnitee's negligence. See, e. g., *Sinclair Prairie Oil Co.* v. *Thornley,* 127 F. 2d 128 (10th Cir. 1942). Some courts hold that a contractor's or subcontractor's agreement to indemnify an owner or contractor against liability for damage to person or property cover injuries caused, in part, by the contractor's or subcontractor's negligence for which the owner or contractor would have been liable only for passive negligence in failing to perform a duty to the injured party. See, e. g., *Dudar* v. *Milef Realty Corporation,* 258 N. Y. 415, 180 N. E. 102 (1932); *Mayer* v. *Fairlawn Jewish Center,* 38 N. J. 549, 186 A. 2d 274, 97 A. L. R. 2d 604 (1962). In the same vein, it has been said that coverage should be excluded by the rule of strict construction in cases involving affirmative acts of negligence. See *Vinnell Company* v. *Pacific Electric Railway Co.,* 52 Cal. Rptr. 2d 411, 340 P. 2d 604 (1959).

We also find many cases, based upon persuasive reasoning, holding that clauses similar to that involved here do cover damages resulting from the negligence of an indemnitee who was a general contractor or owner. See, e. g., *Griffiths* v. *Broderick,* 27 Wash. 2d 901, 182 P. 2d 18, 175 A. L. R. 1 (1947); *Standard Accident Ins. Co.* v. *National Fire Proofing Co.,* 39 Ohio App. 1, 176 N. E. 591 (1931); *American Agric. Chem. Co.* v. *Tampa Armature Works,* 315 F. 2d 856 (5th Cir. 1963); *New Amsterdam Cas. Co.* v. *Kilroy Structural Steel Co.,* 159

N. E. 2d 797 (Ohio Ct. App. 1959); *St. Paul Mercury Indemnity Co.* v. *Kopp,* 121 N. E. 2d 23 (Ohio Ct. App. 1954); *Ohio Oil Company* v. *Smith,* 365 S. W. 2d 621 (Tex. Sup. Ct. 1963); *Princemont Const. Corp.* v. *Baltimore & Ohio R. Co.,* 131 A. 2d 877 (Mun. Ct. App. D. C. 1957); *Northern Pac. Ry. Co.* v. *Thornton Bros. Co.,* 206 Minn. 193, 288 N. W. 226 (1939); *Russell* v. *Shell Oil Co.,* 339 Ill. App. 168, 80 N. E. 2d 415 (1949). See also, *Atlantic Coast Line R. Co.* v. *Robertson,* 214 F. 2d 746 (4th Cir. 1954); *Buckeye Cotton Oil Co.* v. *Louisville & N. R. Co.,* 24 F. 2d 347 (6th Cir. 1928). Most of them point out that rules of strict construction against the indemnitee have no application where the language is unambiguous or that the fact that the language is general and comprehensive does not render it unclear, equivocal or uncertain. In at least one case it was said that to apply the strict construction rule to reach an opposite result would cause a construction patently inconsistent with the plain and clear language of the contracting parties. *Jacksonville Terminal Co.* v. *Railway Exp. Agency,* 296 F. 2d 256 (1962), cert. denied, 396 U. S. 860, 82 S. Ct. 949, 8 L. Ed. 2d 18.[1] Many recent cases have tended to follow this trend. In one of these [*General Acc. F. & L. Assur. Corp. Ltd.* v. *Smith & Oby Co.,* 272 F. 2d 581 (6th Cir. 1959), 77 A. L. R. 2d 1134, reh. denied, 274 F. 2d 819] it was suggested that, if the liability for negligence were spelled out specifically, the clause might be limited to liability only for negligence. In *Moses-Ecco Company* v. *Roscoe-Ajax Corporation,* 320 F. 2d 685 (D. C. Ct. App. 1963), the court said:

> It is difficult to conceive of any phraseology broader than Moses-Ecco's agreement to indemnify Roscoe-Ajax against "any and all loss, cost, damage, or expense * * * on account of any claim, demand

---

[1] This case applied what was thought by the United States Circuit Court of Appeals to be Florida Law. In *Gulf Oil Corp.* v. *Atlantic Coast Line,* 196 So. 2d 456 (Fla. App. 1967), cert. denied, 201 So. 2d 893 (1967), the rule requiring explicit and specific language was applied. Although a subsequent case in that United States Circuit Court of Appeals applied the rule of this Florida decision, the language referred to in the text seems no less appropriate.

or suit * * * by or on behalf of any employee of [Moses-Ecco] * * *." Since the parties specified that "all" losses on "any" claims included those of Moses-Ecco's employees, we think further specification would be superfluous and ritualistic. Moreover, it would appear that no valid claim by an employee of Moses-Ecco could arise against Roscoe-Ajax except through Roscoe-Ajax's own negligence. Consequently to exclude losses caused by Roscoe-Ajax's negligence would deprive that part of the clause which refers to the claims by employees of Moses-Ecco against Roscoe-Ajax of virtually the only meaning it can possibly have.

The appellate division of the New Jersey Superior Court has wrestled with the problem in considering an indemnity agreement between an owner and a contractor.[2] There a building owner was sued by an employee of the contractor engaged in converting the owner's building. The employee was injured when a part of the ceiling fell on him. He alleged that the injury was the result of the owner's failure to furnish a safe place to work in that the ceiling was in a weakened state of repair. The contractor defended the owner's suit to recover for the amount paid by the latter on account of the employee's injury on the ground that the contract should not be construed to indemnify the owner against losses arising out of his own negligence. The New Jersey court's critical evaluation of the cases in support of the rule requiring a clear and unequivocal expression of the intent to indemnify against the indemnitee's negligence revealed that it was not generally applied to frustrate coverage of losses *partially* attributable to negligence of the indemnitee, if the language of the agreement and the surrounding circumstances are indicative of a contractual intent that broad. That court said the weight of authority supported the rule that something less than an express reference to losses from an indemnitee's negligence was sufficient if the intent otherwise appears from the language of the contract and surrounding circumstances. Among the circum-

[2]See *Stern* v. *Larocca,* 49 N. J. Super. 496, 140 A. 2d 403 (1958).

stances there considered were the passive nature of any circumstances there considered were the passive nature of any negligence on the part of the owner and the likelihood that negligence of the owner and negligence of the contractor were concurring causes. It was pointed out that to preclude recovery in every case where the negligence of the indemnitee contributed in any degree to the loss would leave practically no occasion where the indemnity was actually operative. The ultimate holding was that the claim was a contemplated basis for indemnification under the agreement regardless of negligence of the owner with reference to the condition of the ceiling, even though the contractor may have been guilty of no negligence. The court stated that the intent expressed would be frustrated if the obligation were construed to be qualified by the kind or degree of fault or negligence causally related to the injuries, so long as they were precipitated by any phase of doing the work contracted. Still, a distinction seems to have been made between the applicability of the clause in cases of active and those of passive negligence. This distinction may be attributable to the fact that the entire project was under the contractor's control, and he was to have had exclusive possession of the premises as well. Particular attention was called in the opinion to cases holding that the negligence of the indemnitor is immaterial as long as the negligence of the indemnitee was not the sole cause.

An extensive annotation on a building contractor's liability upon an agreement to indemnify an owner for injury to third persons resulting from an owner's negligence appears in 27 A. L. R. 3d 663 (1969). There, it was indicated that even in the absence of specific coverage of an owner's negligence, it is generally held that the owner is afforded protection where his passive or secondary negligence concurs with the contractor's active or primary negligence, but not when the owner's active or primary negligence was the sole or concurring cause. However, the annotator found a number of cases where the owner has been held to be entitled to indemnity under clauses similar to the one involved here, even though the injuries involved were caused or con-

tributed to by his own negligence, and others in which the courts have been aided in holding that general clauses afford indemnity where the owner's negligence was a factor, upon the basis that otherwise the clause would be meaningless, or virtually so. The annotator also found that the great majority of the courts had held or recognized that specific or express language covering the owner's negligence, including active or affirmative negligence, is unnecessary, if the intention to afford such protection clearly appears from the language used, the surrounding facts and circumstances and the purposes and objects of the parties. Among the circumstances considered by these courts were the existence of insurance or contractual requirements pertaining thereto, other contract provisions and the extent of the possession and control of the work premises. While a number of cases were cited denying coverage of injuries caused solely by primary or active negligence on the part of the owner, some jurisdictions (Pa. and N. Y.) seem to deny coverage where active negligence of the owner was a concurrent cause. No real basis exists for making a distinction between rules of law applicable to contracts between owners and contractors and to those between contractors and subcontractors.

Resort to other clauses in the contract at hand discloses that appellee was required to furnish statutory workmen's compensation and public liability insurance, and, apparently, security for his "hold harmless agreement." The certificate of insurance furnished Pickens-Bond covers these requirements and specifically mentions the "hold harmless agreement" as an adjunct of a comprehensive general liability policy. If it was intended that appellee's indemnity cover only the injuries to its employees arising out of the employment, the workmen's compensation policy would have adequately covered the situation. Since no valid claim could possibly be asserted against the general contractor in the absence of some negligence on its part, it seems obvious that the contract clause should cover situations in which there is some legal basis for liability on the part of Pickens-Bond. This conclusion, however, does not

amount to a complete solution, because there is a logical basis for the passive-active negligence and sole-concurring cause distinctions.

In reaching our conclusion, in the absence of direct precedent, we must be quided by the spirit of our law expressed in decisions involving other relationships. In *Gulf Compress Co.* v. *Harrington,* 90 Ark. 256, 111 S. W. 249, 23 L. R. A. (n. s.) 1205,[3] we held that a stipulation in a warehouse receipt that the warehouseman was "[n]ot responsible for loss by fire" did not provide exemption from liability for loss by fire resulting from the warehouseman's negligence, in the absence of express words indicating the intention to do so. The court said that the fact that the warehouseman would not have been liable in the absence of the clause unless he were negligent was not significant because the same contract also enumerated other exemptions from liability for which there would have been no legal basis. This latter argument cannot be advanced as to the contract before us.

Even though an exculpatory, rather than an indemnity clause, was involved in the *Gulf Compress* case, it would not seem consistent with its holding to say that the general words employed here were sufficiently clear to impose indemnity for injuries of which the *sole* proximate clause was the general contractor's active negligence.

It is quite a different matter, however, where there was no negligence on the part of the general contractor, or where his negligence is only a concurring cause. If we held that the general contractor was not indemnified under this clause in those situations, then the clause would be virtually meaningless. Under our law, the general contractor may be held liable for the full amount of damages to a subcontractor's employee who has been fully compensated under the latter's workmen's compensation insurance, if the former's negligence contributed to the employee's injury in any degree,

---

[3]This holding was recognized in *Missouri Pac. Transportation Co.* v. *Williams,* 207 Ark. 750, 182 S. W. 2d 762.

however slight. *The Baldwin Company* v. *Maner,* 224 Ark. 348, 273 S. W. 2d 28. But the general contractor who has paid such a judgment cannot recover contribution from his subcontractor who was a joint tort-feasor, even though the latter may have been guilty of 99% of the negligence causing the injuries. *C. & L. Rural Electric Coop Corp.* v. *Kincaid,* 221 Ark. 450, 256 S. W. 2d 337. This clause in the contract was obviously addressed, at least in part, to avoidance of this inequitable result. It would also avoid litigation as to degrees of negligence. The case just cited recognized the enforceability of a proper indemnity agreement in such circumstances.[4] Consequently, we find that the clause in question clearly and unequivocally provides indemnity to the general contractor, even though he was guilty of negligence contributing to injury and damage to the subcontractor's employee, unless the general contractor's active negligence was the sole proximate cause.

Of course, there is no reason why an indemnity against the general contractor's being held liable for acts or omissions of third parties should not be given by a subcontractor. In *Batson-Cook Company* v. *Industrial Steel Erectors,* 257 F. 2d 410 (5th Cir. 1958), relied upon by appellee, it was clearly recognized that the indemnity would cover injuries or damages caused neither by indemnitor nor indemnitee, but by unrelated third parties, even though the court held that the indemnity did not cover the consequences of the indemnitee's own negligence. Unlike the contract here, the clause in question provided indemnity against injury or damage "sustained or alleged to have been in connection with or to have arisen out of or resulting from the performance of the work by the Subcontractor * * *." The purpose of the indemnity is not confined to requiring the subcontractor to save the general contractor harmless from acts or omissions of the subcontractor. It is general in scope and would cover any situation where the damage or injury is not due to the general contractor's sole active negligence, which is eliminated

---

[4]See also, *Fidelity & Casualty Co. of New York* v. *J. A. Jones Construction Co.,* 200 F. Supp. 264 (E. D. Ark. 1961), aff'd 325 F. 2d 605 (1963).

only for the reasons hereinabove stated. The shifting of the risk of incidents for which the contractor has no responsibility is not unreasonable, particularly when we realize, as we must, that the real responsibility assumed is actually that of the payment of insurance premiums.

We should not read the conjunction "or" as "and" in order to restrict the indemnity to matters which are, or might be, under the subcontractor's control. It is permissible to so read the word "or" when the context in which it is used requires that it be done to effectuate a manifest intention or when not to do so would render the meaning of the clause ambiguous or result in an absurdity. *Hines* v. *Mills,* 187 Ark. 465, 60 S. W. 2d 181; *McCarroll* v. *Southwest Distilled Products,* 198 Ark. 729, 131 S. W. 2d 5; *Beasley* v. *Parnell,* 177 Ark. 912, 9 S. W. 2d 10; *Williams* v. *State,* 99 Ark. 149, 137 S. W. 927, Ann. Cas. 1913A 1056. No such condition exists in the clause before us.

The summary judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

BYRD, J., concurs.

CONLEY BYRD, Justice, concurring. I concur with the reversal and virtually arrive at the same result, but it appears to me that so long as the risk of damage or injury must arise, "in connection with (the subcontractor's) work," any injury resulting from the general contractor's sole active negligence is excluded from the indemnity agreement. Since it is possible that a subcontractor's employee can be injured from a risk not arising in connection with his employer's work and not from the sole active negligence of the general contractor, then it appears that the majority is making the indemnity broader than the parties bargained for.

Suppose that the general contractor was building a 24 story skyscraper, that the subcontractor was installing electrical wiring on the 12th floor and that a

boiler manufacturer in testing the pressure of a boiler in the basement caused the boiler to explode in such manner as to cause the building to fall. In this case the injury to the subcontractor's employees would not be caused by the general contractor's sole active negligence but the language of the majority opinion could lead one to think that the subcontractor's indemnity agreement here involved would protect the general contractor. On the other hand, if the indemnity agreement is construed as protecting only those injuries of employees arising in connection with the subcontractor's work, the general contractor would be without indemnity. It seems to me that the latter interpretation is the more preferable construction because it would give the subcontractor some control, by safety rules or inspections, over those matters under his control.

Admittedly in arriving at my construction of the indemnity agreement, I am reading the word "or" as "and" in the phrase, "employed on *or* in connection with his work." This is in accord with the authorities. They point out that the popular use of "or" and "and" is so loose and frequently inaccurate that their strict meaning is more readily departed from than that of other words and that one may be read in place of the other in deference to the meaning of the context. See *Williams* v. *State*, 99 Ark. 149 (1911). Furthermore, this construction comports with the first sentence of the clause which provides: "Party of the second part shall be responsible for his own work and every part thereof, and all of the work of every description used in connection therewith." Other phrases of the same clause refers to damages . . . "resulting from any action or operation under this sub-contract or in connection with his work."

For the reasons stated, I only concur with the result of the majority opinion.