## NORTH LITTLE ROCK ELECTRIC COMPANY *v.* PICKENS-BOND CONSTRUCTION COMPANY AND AETNA CASUALTY & SURETY COMPANY

5-6021                                            485 S.W. 2d 197

Opinion delivered October 9, 1972

*Wright, Lindsey & Jennings,* for appellant.

*William H. Sutton* and *Smith, Williams, Friday, Eldredge & Clark,* for appellees.

LYLE BROWN, Justice. This case is before us for the second time. See *Pickens-Bond Construction Company and Aetna Casualty & Surety Co.* v. *North Little Rock Electric Co.,* 249 Ark. 389, 459 S.W. 2d 549 (1970).

Appellee Pickens-Bond was general contractor for construction of a manufacturing plant; Aetna Casualty was its liability carrier. North Little Rock Electric Co. subcontracted to perform the electrical work. Curtis Cornelius, an employee of NLR Electric, was injured when a kerosene burning heater (salamander) apparently caused an explosion in proximity to Cornelius. Aetna Casualty, as Pickens-Bond's carrier, settled a personal injury claim with Cornelius and then made demand on NLR Electric for recovery of the sums paid. That demand was based upon an indemnity agreement contained in the subcontract, which provided:

> [North Little Rock Electric Company] shall be responsible for [its] own work and every part thereof, and all the work of every description used in connection therewith. [It] shall specifically and distinctly assume, and does assume, all risks of damage or injury from whatever cause to property or persons used or employed on or in connection with [its] work, and of all damage or injury from any cause to property wherever located, resulting from any action or operation under this subcontract or in connection with [its] work, and undertake to promise to protect and defend [Pickens Bond Construction Company] against all claims on account of any such damage or injury.

In the first case the trial court entered summary judgment for NLR Electric. We reversed, holding there to be a justiciable issue as to whether there was negligence on the part of Pickens-Bond which was the sole proximate cause of the accident. In the event of such negligence we held that Pickens-Bond could not recover under the indemnity contract.

In the case now before us, the court granted a motion for directed verdict at the close of all the testimony and in favor of Pickens-Bond and Aetna Casualty. That was on the theory that NLR Electric had not met the burden of showing by substantial evidence that Pickens-Bond was guilty of negligence which was the sole proximate cause. The appeal is hinged on two points, namely, that the court erred in placing the burden of proof on NLR Electric, and that there was sufficient evidence that the sole proximate cause of injury was active negligence of Pickens-Bond to compel submission of the issue to the jury.

First, we have no hesitancy in saying that the court was correct as to the burden of proof. Pickens-Bond held an indemnity contract executed by NLR Electric which, under a literal interpretation, permitted Pickens-Bond to recover. NLR Electric responds by asserting there is an exception governing the contract which exception has been established by case law. Therefore, NLR Electric asserts the affirmative defense that Pickens-Bond was guilty of negligence which was the sole proximate cause. We are furnished no satisfactory authority which would place the burden on Pickens-Bond to establish that they were free of negligence. To the contrary, see *Chicago, R. I. and P. R. Co.* v. *Powers Foundation Drilling Co.,* 294 F. Supp. 921 (1968); *Davidson* v. *Welch,* 75 Cal. Rptr. 676 (1969). NLR Electric's position is somewhat analogous to a defendant who relies on a breach of the contract by a plaintiff, in which situation it has been held that the defendent must plead and prove the breach. 41 Am. Jur. 2d, Indemnity, § 42. Also see *Snyder* v. *United States Fidelity & Guaranty Co.,* 249 P. 422 (Okla. 1926). The same citation is authority for the position that "The broad rules of evidence applicable to civil proceedings generally apply to actions involving questions of indemnity."

This brings us to the second point, namely, that a jury issue was made on the allegation that Pickens-Bond's negligence was the sole proximate cause. We have examined the evidence in light of the well established rule that it should be viewed in the light most favorable to NLR Electric, and if fair-minded men might draw different conclusions therefrom it was error to direct a verdict against NLR Electric. For the evidence to be legally sufficient it must be substantial; and substantiality is a question of law. We think the trial court was correct. Someone set a gasoline can in proximity to the heater, or the heater, being movable, was moved near the gasoline can which exploded and struck Cornelius. The heater remained in its upright position and continued to burn normally. Here is an excerpt from a stipulation in the case which strongly substantiates our conclusion:

There were no Pickens-Bond employees in the immediate vicinity of the explosion although some of its employees were working on the job that day. The closest people to the stove and fuel can were Curtis Cornelius and a North Little Rock Electric Company employee who was assisting him.

The salamander burned liquid fuel. Specified employees of Pickens-Bond were designated by it to keep the stove fueled. From time to time, employees of other subcontractors on the job would put fuel in the stove. It is not known who last filled the stove with fuel before the explosion and fire of February 24, 1965 occurred. It is not known who placed the can of fuel in the vicinity of the salamander before the explosion.

A foreman for another subcontractor, called by NLR Electric, testified that his employees moved the heater from place to place. On the day of the explosion the weather was extremely cold. In fact most of Pickens-Bond's employees had gone home because of the weather. The claimant, Cornelius, testified that he could not say that people other than the designated laborers "fooled with" the salamanders; additionally he testified that there were a number of subcontractors on the job who used gasoline out of con-

tainers. Witness Bill Hughes was the superintendent for another subcontractor. He said he had some fifteen to eighteen men on the job at the time of the accident and he was sure some of them were working in the vicinity of Mr. Cornelius. He said he was sure that some of his men pulled the heaters along the floor, and that in cold weather he had a hard time keeping them away from the heaters. He said he never told any of them "not to pull the heaters along the floor." Further recitation of evidence would serve no useful purpose. Suffice it to say there was no testimony which substantially disputed the stipulation or any of the evidence we have recited.

Affirmed.