The BUCKEYE CELLULOSE
CORPORATION, Appellant,

v.

BRAGGS ELECTRIC CONSTRUCTION
COMPANY, Appellee.

No. 78–1324.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1978.

Decided March 12, 1979.

---

James D. Storey (filed brief) of Wright, Lindsey & Jennings, Little Rock, Ark., for appellant.

John S. Cherry, Jr. of Barber, McCaskill, Amsler, Jones & Hale, filed brief, Little Rock, Ark., for appellee.

Before LAY and HEANEY, Circuit Judges, and HANSON,* Senior District Judge.

PER CURIAM.

This is an appeal from summary judgment in favor of Braggs Electrical Company (Braggs) in a declaratory judgment action brought to secure an interpretation of an indemnity clause of a contract between Braggs and Buckeye Cellulose Corporation (Buckeye).[1]

The case was decided by the district court[2] on cross motions for summary judgment and hence, there are no disputed issues of material fact.

On August 26, 1971 Buckeye and Braggs entered into a contract (in the form of a purchase order) whereby Braggs was to install wiring on a 150 horsepower motor at Buckeye's agricultural products processing mill in North Little Rock, Arkansas. The contract form contained an indemnity clause as follows:

> Seller [Braggs] agrees to indemnify and save buyer [Buckeye] harmless from any and all judgments, orders, decrees, awards, costs, expenses, including attorney's fees and claims on account of damage to property or personal injuries (including death) which may be sustained by himself, his employees, or Buyer, or Buyer's employees, or third persons, arising out of or in connection with work done, *excepting only claims based solely on acts negligently committed by buyer,* and Seller agrees to provide complete and adequate insurance (in amounts, under policies and with companies satisfactory to Buyer) to indemnify himself and Buyer against the same, provided that if Seller provides and maintains in force adequate insurance in accordance with the terms of this order, then Seller's obligation to indemnify and save Buyer harmless shall be limited to the amount of said insurance . . ." (Emphasis added).

Buckeye authored the form language in the contract.

On September 3, 1971 Braggs sent two employees, Vandament and Howell, to Buckeye's plant to begin wiring the motor. Both were qualified electricians and prior to beginning work they made sure that the proper electrical power sources were de-energized. At the end of work on September 3 Vandament and Howell departed Buckeye's premises for the long Labor Day weekend.

In the interim before Braggs' employees returned to work, Buckeye needed the use of a hoist connected to the circuit de-energized by Vandament and Howell. To secure an alternate supply of power, a Buckeye employee, using a length of cable, "jumped" electrical power from another source without disconnecting the hoist from the circuit de-energized by Vandament and

---

* The Honorable William C. Hanson, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

1. Judgment was originally entered April 1, 1976; however, the parties did not receive notice thereof until March 1977. Buckeye then moved the district court to vacate and re-enter judgment in order to permit an appeal. The district court denied this motion and, on appeal, this Court reversed the district court and directed re-entry of judgment. *Buckeye Cellulose Corp. v. Braggs Electric Construction Co.*, 569 F.2d 1036 (8th Cir. 1978). Judgment was thereupon re-entered effective April 18, 1978. Buckeye timely filed its notice of appeal from the second judgment entry.

2. The Honorable Paul Benson, Chief District Judge, District of North Dakota, sitting by designation.

Howell. As a result, the alternate power supply fed through the hoist and into the circuit Braggs' employees had been working on, re-energizing it. When they returned to work following the holiday weekend, Vandament and Howell checked to insure that the junction box they had been working on remained de-energized. Though they found that the power was disconnected at the points where they disconnected it the previous Friday, Vandament and Howell neglected to check the line with a volt meter. Not knowing that the "jumped" power source had re-energized the junction box, Vandament cut into electrical lines at the box and received an electrical shock. Both Vandament and Howell fell to the ground from a ladder they had been standing on and both sustained injuries.

Vandament filed suit against Buckeye in state court alleging that Buckeye had been negligent. After reversal of a favorable plaintiff's judgment on grounds not pertinent here, Vandament and Buckeye settled for $55,000. *Buckeye Cellulose Corp. v. Vandament*, 256 Ark. 434, 508 S.W.2d 49 (1974). Buckeye also paid Howell $2,500 in settlement of his claim.

■ In this declaratory judgment action, Buckeye seeks a construction of the indemnity provision in the contract with Braggs which would require Braggs to indemnify Buckeye for its payment to Vandament and Howell. Buckeye argued in district court and in this Court that a contributing cause of the injuries was the negligence of Vandament and Howell in not testing the wire with a volt meter, and because Buckeye was therefore not solely negligent, Braggs was obligated to indemnify the settlements.[3] As the district court noted, the gist of Buckeye's interpretation of the indemnity clause is that it provides comprehensive indemnification except where the claim or claims in question are "caused solely by acts negligently committed by" Buckeye.

For its part, Braggs argued for an interpretation of the exclusionary language in the indemnity clause closer to its literal meaning, viz., no indemnification is provided for "claims *based* solely on acts negligently committed by buyer [Buckeye]." Indemnity clause, *ante*. Since the claims of Vandament and Howell were "based solely" on the negligent acts of Buckeye employees, Braggs asserted that the indemnification provision is not applicable.

The district court observed that under Arkansas law any contractual intention that Braggs would indemnify Buckeye for damages resulting from the latter's negligence must be clearly and unequivocally expressed. *See Missouri Pacific Railroad v. Winburn Tile Manufacturing Co.*, 461 F.2d 984, 988 (8th Cir. 1972); *Paul Hardeman, Inc. v. J. I. Hass Co.*, 246 Ark. 559, 439 S.W.2d 281, 284–85 (1969). The district court was of the opinion that the intendment of the indemnity exception relating to losses from Buckeye's negligence was not clearly expressed in the language used, and applied the rule that ambiguous contract language should be interpreted against the party who wrote it. *See Arkansas Power and Light Co. v. Murry*, 231 Ark. 559, 331 S.W.2d 98, 99 (1960). Moreover, in view of the holding in *Pickens-Bond Construction Co. v. North Little Rock Electric Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970), in which the Arkansas Supreme Court construed an otherwise all-encompassing indemnity provision to contain an implied exception where the indemnitee's active negligence "was the sole proximate cause," *id.* 459 S.W.2d at 557, the district court reasoned that the exception in the Buckeye-Braggs contract would in effect be surplusage if read as Buckeye urged, for the exception would arise by operation of law from other general language in the indemnity clause. The district court concluded that if, as Buckeye urged, the indemnification exception in its purchase order form was intend-

---

**3.** The district court did not make an explicit finding as to the existence or non-existence of negligence on the part of Vandament and Howell. It observed, however, that "[a]n examination of the transcript of the trial reveals that Vandament proved the negligence of Buckeye was a proximate cause of the accident. There was no evidence of negligence on the part of anyone other than Buckeye's employees and possibly Vandament and Howell."

ed to contractually state the holding in *Pickens-Bond,* Buckeye could easily and clearly have done so in unambiguous language focusing on the cause of the loss or damage, rather than the claim of the injured parties. *Cf. id.* 459 S.W.2d at 552; *Missouri Pacific Railroad v. Winburn Tile Manufacturing Co.,* 461 F.2d at 986, 987 (involving an indemnity clause exception excepting losses where "such loss and damage may arise from the sole negligence of [indemnitee] . . . ").

In view of Buckeye's failure as author of the contract to clearly state the scope of the indemnity, the district court construed the exception "to mean what it literally says" and granted judgment to Braggs because the claims of Vandament and Howell were "based solely" on Buckeye's negligent acts.

■ We have carefully reviewed the district court's construction and application of Arkansas law. We find no error and affirm on the basis of Judge Benson's memorandum of decision. As this Court stated in *Missouri Pacific Railroad Co. v. Arkansas Oak Flooring Co.,* 434 F.2d 575, 579 (8th Cir. 1970):

> The generally recognized rule is that an indemnity agreement should not be construed to permit the indemnitee to recover for its own negligence "unless the court is firmly convinced that such an interpretation reflects the intention of the parties." *United States v. Seckinger,* 397 U.S. 203, 211 [90 S.Ct. 880, 25 L.Ed.2d 224] (1970).

*Cf. Missouri Pacific Railroad Co. v. Winburn Tile Manufacturing Co.,* 461 F.2d at 989 ("the indemnifying language . . . is so unambiguous as to leave no doubt of the parties' intent"). Where, as here, the literal meaning of the language used in an exception to an indemnity provision would except the loss in question from indemnity, we cannot say we are "firmly convinced" that a contrary construction of the provision was intended by the parties.

Affirmed.