NABHOLZ CONSTRUCTION CORPORATION
*v.* Danny GRAHAM: Action Incorporated;
and Lasley Acoustics Company

93-1150 892 S.W.2d 456

Supreme Court of Arkansas
Opinion delivered February 13, 1995

*Laser, Sharp, Wilson, Bufford & Watts, P.A.*, by: *David M. Donovan* and *Barrett & Deacon*, by: *J.C. Deacon* and *D.P. Marshall, Jr.*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Robert L. Henry, III* and *R. Kenny McCulloch*, for appellees.

JACK HOLT, JR., Chief Justice. Two issues are raised among the parties in this appeal and cross-appeal from a decision of the Searcy County Circuit Court in favor of appellee Danny Graham, an injured construction worker, on his negligence claims. At the heart of the dispute is an indemnity agreement between the general contractor, appellant Nabholz Construction Corporation, and two subcontractors, appellees Action, Incorporated, and Lasley Acoustics Company, for the injuries suffered by Mr. Graham.

The appellant, Nabholz Construction Company, contends that the trial court erred in (1) failing to enforce the subcontracts' indemnity clauses and (2) instructing the jury on the doctrine of acquiescence as applied to the indemnity agreements between the general contractor and its subcontractors. The appellees and cross-appellants, Action and Lasley, maintain that the trial court erred in granting summary judgment on Nabholz's indemnity claim (a point which entirely overlaps with Nabholz's first argument). Appellee Danny Graham takes no position on the points raised by Nabholz but prays that the judgment in his favor be affirmed. Further, he requests that his cross-appeal against Nabholz be dismissed. We grant Mr. Graham's request.

We hold that the trial court did not err in granting summary

judgment on the indemnity agreements but erred in having failed to enforce the indemnity agreements (particularly in light of having granted summary judgment in favor of Nabholz with respect to the obligations created by the indemnity clauses) and in having instructed the jury on the applicability of the doctrine of acquiescence to the circumstances of the case.

### Facts

In 1990, Nabholz Construction Company was engaged as general contractor for the construction of the Leisure Arts Building in Little Rock. Nabholz subcontracted with Action, Incorporated, to install the heating and air system in the building and with Lasley Acoustics Company to perform sheetrock work on the project. Both Action and Lasley signed standard subcontract forms which provided in pertinent part:

> ARTICLE X. In addition to the foregoing provisions, the parties also agree <u>that Subcontractor shall</u>: . . .
>
> 9. (b) Indemnify, hold harmless and defend Contractor, its agents and employees from any lawsuits, causes of action, claims, liabilities and damages, of any kind and nature, including, but not limited to, attorney's fees and costs arising out of the performance of this Contract whether attributable in whole or in part to any act, omission or negligence of Contractor, its agents or employees, and including, but not limited to, any and all lawsuits, causes of action, claims, liabilities and damages, as provided above which Contractor, its agents or employees may sustain by reason of any failure by Subcontractor to indemnify as provided herein, or any failure by Subcontractor to otherwise perform its obligations pursuant to this Contract, or by reason of the injury to or death of any person or persons or the damage to, loss of use of or destruction of any property resulting from Work undertaken herein.

(Underlining in original.)

On the morning of November 15, 1990, Richard Day, the Nabholz job superintendant, learned that Action was nearing the stage at which it would be ready to install its duct work through the second floor, which was covered by a concrete slab except for a "block-out" area that consisted of sheet metal. In prepara-

tion, Mr. Day instructed one of Nabholz's metal workers to cut out the section of sheet metal in the "block-out" area and ordered Nabholz's carpentry foreman to cover the resulting hole, which was done with a sheet of plywood not affixed to the floor. The plywood remained in place for several hours, and no oral or written warnings were given about it.

Appellee Danny Graham, a sheetrocker or drywaller, was an employee of Lasley and, on November 15, 1990, was working at the Leisure Arts job site hanging drywall on the second floor of the building. In the afternoon, he lifted the piece of plywood covering the "block-out" hole in order to move it out of his way and fell through the opening to the concrete floor below, injuring himself.

After the accident, Mr. Graham filed suit against Action and Nabholz. Nabholz, in turn, cross-complained against Action and filed a third-party complaint against Lasley contending that it was entitled to indemnification from the two subcontractors. Before the matter came to trial, Mr. Graham dismissed his claim against Action.

Prior to trial, the trial court granted a partial summary judgment in favor of Nabholz, finding that the indemnity agreements of Action and Lasley with Nabholz created an obligation to indemnify Nabholz. At the conclusion of the trial, the circuit court also, over Nabholz's objection, read the following instruction to the jury:

> As a defense to this claim of indemnity, Action and Lasley contend that Nabholz acquiesced in the condition which caused Danny Graham's damages. Acquiescence, if established by the evidence, is a defense for indemnity.

> Acquiescence means that Nabholz Corporation not only knew of the hole in the floor and its condition but that Nabholz also acquiesced in the continuation of the hole in that condition. The fault of Nabholz Construction must be serious enough and sufficiently distinct from any fault of Action and/or Lasley before the defense of acquiescence applies.

The case was submitted on interrogatories to the jury, which unanimously found that Nabholz had been 100 percent at fault

and that the defense of acquiescence had been established with regard to Nabholz's indemnity claim. Damages against Nabholz in the amount of $1,100,000 were awarded, and the trial court, in line with the jury's verdict, entered its judgment finding that Action and Lasley were not obligated to indemnify Nabholz.

From that judgment, the present appeal and cross-appeal arise.

## I. Indemnification

Nabholz argues, in its first point for reversal, that the trial court erred in failing to enforce the indemnity clauses that appeared in the subcontracts executed by Action and Lasley. In an overlapping point on cross-appeal, which will be considered here, Action and Lasley urge that the trial court erred in granting summary judgment on the indemnity agreements, contending that the clauses in question did not contain clear and unequivocal language and that Mr. Graham's injury did not "arise out of the performance of" either subcontract.

Concerning the cross-appeal, the trial court correctly found that, by the terms of the indemnity clause, Action and Lasley had clearly and unequivocally agreed to indemnify the general contractor against injuries caused solely by Nabholz's negligence. Action and Lasley, as cross-appellees, insist that the agreement shows no such intent and point to cases in which indemnity clauses have been strictly construed.

■ This court has held that a contract of indemnity is to be construed in accordance with the general rules of construction of contracts. *Arkansas Kraft Corp.* v. *Boyed Sanders Const. Co.*, 298 Ark. 36, 764 S.W.2d 452 (1989). If there is no ambiguity in the language of the contract, then there is no need to resort to rules of construction. *Id.* But a subcontractor's intention to obligate itself to indemnify a general contractor for the general contractor's *own* negligence must be expressed in "clear and unequivocal terms and to the extent that no other meaning can be ascribed." *Paul Hardeman, Inc.* v. *J.I. Hass Co.*, 246 Ark. 559, 566, 439 S.W.2d 281, 285 (1969).

In the *Hardeman* case, for instance, this court held that the uncertainty of the manner in which the term "occasioned by" was used in an indemnity clause negated the "clear and unequiv-

ocal" intent that was necessary on the part of the subcontractor to bind itself for the negligence of the general contractor. While we focused on the ambiguity of "occasioned by," it is worth noting that the indemnity clause in that case did not specifically allude to accidents "occasioned by" the general contractor; rather, the section spoke of

> all liability, claims, demands or judgments for damages arising from accidents to persons or property occasioned by Subcontractor, his agents or employees, and . . . all claims or demands for damages arising from accidents to Subcontractor, his agents or employees, whether occasioned by Subcontractor or his agents or his employees. . . .

246 Ark. at 565, 439 S.W.2d at 284. Although not remarked upon by this court in *Hardeman*, the lack of reference to the general contractor compounded the ambiguity inherent in the term "occasioned by."

In another decision, *Pickens-Bond Const. Co.* v. *North Little Rock Elec. Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970), we held that the subcontractor had clearly and unequivocally agreed to indemnify the general contractor where the indemnity clause provided that:

> [the subcontractor] shall specifically and distinctly assume, and does assume, all risks of damage or injury from whatever cause to property or persons used or employed on or in connection with his work, and of all damage or injury from any cause to property wherever located, resulting from any action or operation under this sub-contract or in connection with his work. . . .

249 Ark. at 391, 459 S.W.2d at 551. We remanded the matter for a determination of whether the general contractor's active negligence had been the sole proximate cause of the accident in the case, noting that, in the event the general contractor's sole negligence were established, it could not recover under the indemnity clause. In the second appeal, we affirmed the trial court's directed verdict in favor of the general contractor on the question of the sole proximate cause. *North Little Rock Elec. Co.* v. *Pickens-Bond Const. Co.*, 253 Ark. 172, 485 S.W.2d 197 (1972).

Here, Action and Lasley assert on cross-appeal that there is

ambiguity and uncertainty in the indemnity clause drafted by Nabholz. They highlight the phrase "including, but not limited to, attorney's fees and costs arising out of the performance of this Contract whether attributable in whole or in part to any act, omission or negligence of Contractor, its agents or employees" and argue that, because of the absence of a comma, both "arising out of" and "whether attributable" modify "attorney's fees and costs."

It is obvious enough from even a cursory reading of the indemnity clause that the portion of the sentence in question beginning with the gerund "arising" relates back to the phrase that immediately precedes "including":

> *Indemnify, hold harmless and defend Contractor, its agents and employees from any lawsuits, causes of action, claims, liabilities and damages, of any kind and nature*, including, but not limited to, attorney's fees and costs *arising out of the performance of this Contract whether attributable in whole or in part to any act, omission or negligence of Contractor, its agents or employees. . . .*

(Emphasis added.) Unlike the indemnity clause in *Hardeman*, here, the general contractor is clearly identified as indemnitee.

█ In this respect, the situation is similar to that in *Southside Water Ass'n, Inc.* v. *Hargan*, 270 Ark. 117, 118, 603 S.W.2d 466, 467 (Ark. App. 1980), where the Arkansas Court of Appeals ruled that the language of an indemnity contract was clear and unequivocal in obligating the subcontractor to indemnify the general contractor for claims relating to "injury, death or damage" that might "in any way arise out of the prosecution of the work hereunder by the Contractor or subcontractors, and without regard to negligence on the part of anyone whomsoever." If anything, the indemnity clause at issue in the present case is even more unequivocal in its stated intent to absolve Nabholz in particular of liability "whether attributable in whole or in part to any act, omission or negligence of Contractor, its agents or employees." It therefore cannot be said that the trial court erred in finding Nabholz's indemnity clause to be clear and unequivocal in meaning.

█ The question remains, then, whether the trial court, having gone thus far, erred in not requiring indemnification.

Action and Lasley, for their part, essentially make a public-policy argument for affirming the judgment, although they acknowledge that we have not previously held an agreement indemnifying the indemnitee for its own negligence to be a violation of public policy. Indeed, this court indicated in both *Paul Hardeman, Inc.* v. *J.I. Hass Co., supra,* and *Pickens-Bond Const. Co.* v. *North Little Rock Elec. Co., supra,* that indemnification contracts are not against public policy.

■ Despite references to public policy considerations in Action's appellate brief, this issue was not sufficiently developed at trial, and no ruling on it was obtained from the circuit court. Moreover, public policy is declared by the General Assembly, not the courts. *Murphy* v. *Epes,* 283 Ark. 517, 678 S.W.2d 352 (1984).

■ In short, we hold, with respect to Action's and Lasley's cross-appeal, that the trial court did not err in granting summary judgment on the indemnity agreements but that, with regard to Nabholz's appeal, it committed reversible error in failing to enforce the indemnity agreements between the parties.

## II. Acquiescence

Nabholz argues, in its second point for reversal, that the trial court erred in instructing the jury on the application of the defense of acquiescence to the indemnity agreements. We agree that the concept has no relevance to the circumstances of the present case.

■ The doctrine of acquiescence is set forth in the *Restatement of the Law of Restitution,* § 95 (1937):

> Where a person has become liable *with another* for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, *which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe,* he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, *unless after discovery of the danger, he acquiesced in the continuation of the condition.*

(Emphasis added.) As the italicized phrases indicate, acquies-

cence, as defined above, is more applicable to a party in Action's or Lasley's posture than to Nabholz as the solely negligent entity.

Moreover, the cases upon which Action and Lasley rely to support their view that the instruction on acquiescence was warranted are, as they acknowledge, all decisions dealing with railroad sidetrack agreements and the Federal Employers Liability Act (FELA). *Burlington Northern, Inc.* v. *Hughes Bros., Inc.,* 671 F.2d 279 (8th Cir. 1982); *Rouse* v. *Chicago, Rock Island & Pacific Railroad Co.,* 474 F.2d 1180 (8th Cir. 1973); *Missouri Pacific Railroad Co.* v. *Winburn Tile Mfg. Co.,* 461 F.2d 984 (8th Cir. 1972); *Missouri Pacific Railroad Co.* v. *Arkansas Oak Flooring Co.,* 434 F.2d 575 (8th Cir. 1970); *Pennsylvania Railroad Co.* v. *Erie Avenue Warehouse Co.,* 302 F.2d 843 (3rd Cir. 1962).

The Eighth Circuit Court of Appeals, in *Rouse* v. *Chicago, Rock Island & Pacific R.R. Co., supra,* and *Missouri Pacific R.R. Co.* v. *Arkansas Oak Flooring Co., supra,* imported the tort concept of acquiescence into a set of contractual duties. It did so, however, in the context of specific federal law (FELA) and particular factual circumstances (railroad spur-track accidents). The present situation is simply not comparable.

 Action and Lasley nevertheless contend that the general principle embodied in those cases — that the defense of acquiescence can defeat the indemnification claim of a party whose misconduct triggered liability — is equally applicable to other fact situations. Still, the origins and application of the doctrine cannot be ignored. We have never adopted the doctrine of acquiescence, and we decline to do so now. The trial court erred in allowing the issue of acquiescence to go to the jury.

We dismiss the cross-appeals and reverse and remand the appeal for proceedings consistent with this opinion.

GLAZE and ROAF, JJ., not participating.

SPECIAL JUSTICE KATHERINE C. GAY concurs.

KATHERINE C. GAY, Special Associate Justice, concurring. I concur in the decision of the court to reverse and remand this case, but write separately to state that the contracts before the court are against public policy, and if they are not, they should be. The facts of this case bring into sharp focus the problems that develop

when a contracting party is able to obtain absolute indemnity when its own negligence is the sole proximate cause of damage.

Graham was injured as a result of Nabholz's total inattention to safety at its construction site for the Leisure Arts Building in Little Rock. The testimony in that regard is uncontradicted. On the day of the incident, a Nabholz employee cut a three-foot square hole in the floor of the second story of the building, for heating and cooling ductwork to pass through. He laid a sheet of plywood over the hole. The plywood was not fastened down in any way, although it would have been easy to do so. No warning was written on the plywood, although it would have been easy to do so. No signs were placed over the plywood to warn that it covered a hole, although Nabholz had such signs available to it at the work site. No one warned the workmen on the second floor that there was a hole under the plywood. Graham, a sheetrocker, was clearing debris from the floor in the area of the hole in order to place scaffolding to hang sheetrock. When he lifted the plywood and stepped forward to shove it aside, he fell through the hole in the floor.

The public policy of the State of Arkansas as it relates to safety in the workplace is expressed in Ark. Code Ann. § 11-2-117(a) (1987):

> Every employer shall furnish employment which is safe for the employees therein and shall furnish and use safety devices and safeguards. He shall adopt and use methods and processes reasonably adequate to render such an employment and place of employment safe and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of the employees.

The term "employer" includes a corporation having control of a place of employment. Ark. Code Ann. § 11-2-102. As general contractor, Nabholz had control of the construction site of the Leisure Arts Building in Little Rock, and therefore Nabholz is an "employer" to which Ark. Code Ann. § 11-2-117 applies. However, the contracts with Lashley and Action have the effect of absolving Nabholz from all financial responsibility to any injured party for failing to render that workplace safe. Where a contract removes all financial incentives to provide a safe place

to work, that contract is in violation of public policy expressed by our legislature in enacting Ark. Code Ann. § 11-2-117.

Nabholz argues that the type of contract at issue was common in the construction industry, and amounts to no more than an agreement as to which party would bear the cost of insurance. I find significant differences between the absolute indemnity Nabholz claims from Action and Lasley, and a contract of insurance. Insurance is governed by statute and heavily regulated. The availability and cost of indemnity offered by insurance is based on the experience rating of the insured. And the indemnity provided by an insured policy has a financial limit.

In the case at bar, the only legal control imposed on the absolute indemnity contracts is found in a series of decisions of this court over the past twenty-five years, in all of which the court has strained mightily to avoid upholding such contracts. Nabholz did not have to demonstrate insurability or a history of safe practices to obtain the indemnity, and in fact did not have to pay for it at all — the agreement to indemnify was a price the subcontractors had to pay for the privilege of doing business with Nabholz. And the indemnity Nabholz acquired had no financial limit. Nabholz took the position at oral argument that if Graham's injuries had been found compensable in the sum of $50,000,000 by the jury, Action and Lasley would have been liable to it for that sum, even though Nabholz was the sole cause of the damage and Action and Lasley were innocent of any wrongdoing.

It is obvious from the record that Nabholz had no financial incentive to provide a safe place to work. The legislature in Ark. Code Ann. § 11-2-117, has expressed a public policy in favor of preventing workplace accidents. In terms of social benefit, prevention of injury is even more important than adequate compensation for injury. Yet the contracts at issue made Nabholz totally unaccountable for its creation of a dangerous place to work. Therefore the contracts are against public policy.