# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2245/05-2351

_____

| | |
|---|---|
| Union Pacific Railroad Company; <br> Missouri & Northern Arkansas <br> Railroad Company, Inc., <br><br>      Appellants/ <br>      Cross-Appellees, <br><br> v. <br><br> ConAgra Poultry Company, <br><br>      Appellee/Cross-Appellant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> *   Appeal from the United States <br> *   District Court for the <br> *   Eastern District of Arkansas <br> * <br> *       [UNPUBLISHED] <br> * |

_____

Submitted: March 16, 2006
Filed: June 29, 2006

_____

Before ARNOLD and GRUENDER, Circuit Judges, and MAGNUSON,[1] District
    Judge.

_____

MAGNUSON, District Judge.

    This case is before us on two interlocutory appeals. Union Pacific Railroad
Company and Missouri & Northern Arkansas Railroad Company, Inc. (collectively
"the Railroads") appeal an order granting a motion to compel discovery. ConAgra

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

Poultry Company ("ConAgra") appeals an order granting summary judgment to the Railroads.

**BACKGROUND**

This case began as a personal injury lawsuit initiated by Kenneth and Priscilla Burress, who sought to recover from the Railroads for personal injuries sustained by Mr. Burress when he was hit by a boxcar on the premises of his employer, ConAgra. Mr. Burress and another employee were moving two boxcars through the use of ConAgra's switch engine when the accident occurred. The Burresses settled with the Railroads for $5,000,000.

The Railroads filed a third-party complaint against ConAgra, seeking indemnification under the terms of an Industry Track Agreement ("Agreement"). The district court[2] granted summary judgment for the Railroads on the basis that the Burresses' losses were covered by the indemnity provisions of the Agreement, but the court reserved for trial the issue of whether the settlement was reasonable.

After the summary judgment order issued, ConAgra served discovery requests relating to the reasonableness and good faith of the settlement. Some of the requested information included communications between the Railroads and their counsel and mental impressions of counsel. The Railroads objected to the requests on the grounds of relevance, attorney-client privilege, and work-product protection. ConAgra moved to compel responses, and the district court granted the motion.

---

[2]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

**DISCUSSION**

**A.     The Summary Judgment Order**

ConAgra presents two general arguments for reversal of the summary judgment order: (1) that the Agreement's indemnity provisions are ambiguous, and (2) that the location of the accident creates a genuine issue of material fact.  Neither of these arguments has merit.

1.     <u>Whether the Allocation of Liability Under the Agreement Is Ambiguous</u>

ConAgra contends that the Agreement is ambiguous because it contains conflicting allocations of liability.  The relevant part of the Agreement, section 4(c), provides:

> (c)   Except as otherwise specifically provided in this Agreement, all Loss related to the construction, operation, maintenance, use, presence or removal of the Track shall be allocated as follows:
>
> > 1.  The Railroad shall pay the Loss when the Loss arises from or grows out of the acts or omissions of the Railroad whether or not a Third Person contributes to cause the Loss.
> >
> > 2.  The Industry [ConAgra] shall pay the Loss when the Loss arises from or grows out of the acts or omissions of the Industry, or when the Loss arises from or grows out of . . . (iv) <u>intraplant switching</u> . . . .  This subsection applies regardless of . . . whether or not the Railroad or a Third Person contributes to cause the Loss.
> >
> > 3.   Except as otherwise more specifically provided in this Agreement, Railroad and Industry shall pay equal parts of the Loss that arises out of the joint or concurring negligence of the

> Railroad and the Industry, whether or not the acts or omissions of a Third Person contribute to cause the Loss. . . .

(Appellant App. at 47) (emphasis added). The district court concluded that ConAgra was obligated to indemnify the Railroads under section 4(c)(2)(iv) because the loss arose from intraplant switching.

A court must construe an indemnity clause according to the general rules of contract interpretation. Pickens-Bond Constr. Co. v. N. Little Rock Elec. Co., 459 S.W.2d 549, 552 (Ark. 1970). However, if a contract's language is clear and unambiguous, there is no need to rely on rules of construction. Id.

ConAgra first contends that the term "intraplant switching" is ambiguous. Section 4(c)(2)(iv) of the Agreement indemnifies the Railroads, without regard to any negligence of the Railroads, for losses incurred during "intraplant switching." The Agreement defines this term as "the movement of rail cars on the Track by the Industry [ConAgra] by any method." (Appellant App. at 46.) The "Track" is defined as 1,905 feet of track as indicated on a map attached to the Agreement. (Id. at 41.) Neither the term "intraplant switching," nor any other term in section 4(c)(2)(iv) imposing the obligation to indemnify on ConAgra, is ambiguous. Mr. Burress's accident occurred during ConAgra's movement of rail cars on a track covered by the Agreement, and ConAgra's duty to indemnify the Railroads in this circumstance is expressed in such clear and unambiguous terms that no other meaning is possible.

ConAgra next argues that the subsections of section 4 cannot be reconciled with each other under the ruling of the district court. Under Arkansas law, a contract must be construed as a whole, Fort Smith Light & Traction Co. v. Kelley, 127 S.W. 975, 980 (Ark. 1910), and a specific contract clause controls over a general one, Pate v. Goyne, 204 S.W.2d 900, 901 (Ark. 1947). Here, the district court implicitly determined that the specific subsection (c)(2)(iv) controls over the more general

subsection (c)(1) because the loss arose out of ConAgra's movement of boxcars on the track, or in other words, during intraplant switching. Moreover, subsection (c)(1) does not apply because it requires the Railroads to pay for a loss arising from an act or omission of the Railroads, which did not occur in this case. Subsection (c)(3) does not apply because it is a "catch-all" provision applicable only when there is not a more specific provision covering the loss and when the Railroads and ConAgra are concurrently negligent. The subsections of section 4 do not create any ambiguity.

Finally, ConAgra claims that the word "contributes" in subsection (c)(2) is ambiguous because the term does not make ConAgra liable if a loss is caused by the sole negligence of the Railroads. Although we believe the term does not create any ambiguity, the issue is irrelevant as the district court did not found its decision on this language.

In sum, the indemnity provisions of the Agreement are clear and unambiguous. The Agreement specifically details the circumstances under which either party or both parties will be responsible for a loss. Mr. Burress was injured during intraplant switching, and subsection (c)(2)(iv) clearly and unambiguously allocates this loss to ConAgra.

2.      Whether the Location of the Accident Creates an Issue of Material Fact

ConAgra argues that the location of the accident raises a genuine issue of material fact regarding the scope of the term "intraplant switching." ConAgra does not dispute that the accident occurred during an intraplant switching operation. It contends, however, that the switching operation occurred outside the fence surrounding its facility, and thus, the switching was not "intraplant."

We reject ConAgra's argument. The Agreement defines "intraplant switching," and the definition is clear. The accident occurred while ConAgra was moving railcars

on a track subject to the Agreement. This is the very definition of "intraplant switching." Whether or not the accident occurred inside the facility's fence is irrelevant. The Agreement defines the track covered by the Agreement as 1,905 feet of specific track at ConAgra's facility and does not mention a fence. It is undisputed that the accident occurred on the 1,905 feet of track covered by the Agreement. Consequently, the location of the accident does not create a genuine issue of material fact.

**B.     The Discovery Order**

Title 28 U.S.C. § 1292(b) provides for our jurisdiction over appeals of interlocutory decisions. White v. Nix, 43 F.3d 374, 376 (8th Cir. 1994). Pretrial discovery orders are almost never immediately appealable. Coleman v. Sherwood Med. Indus., 746 F.2d 445, 446 (8th Cir. 1984). A party may immediately appeal a discovery order only if the order presents a controlling question of law or if an interlocutory appeal will materially advance the termination of the litigation. See 28 U.S.C. § 1292(b); see also 8 Charles Alan Wright, et al., Federal Practice and Procedure § 2006 (2d ed. 1994). Neither circumstance is present here. The discovery dispute is ordinary and straightforward, and the legal questions are settled issues of law. A review of the discovery order will not resolve any of the substantive claims or eliminate the need for trial. Accordingly, we decline to exercise jurisdiction over the interlocutory appeal of the discovery order.

**CONCLUSION**

The grant of summary judgment is affirmed, and the appeal of the interlocutory discovery order is dismissed for lack of jurisdiction.

_____