REGIONS BANK & TRUST, N.A., Administrator of
the Estate of Victoria Ann Elder *v.*
STONE COUNTY SKILLED NURSING FACILITY, INC.

CA 00–147 38 S.W.3d 916

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered February 28, 2001
[Petition for rehearing denied April 4, 2001.]

*McMath & Associates*, by: *Sandy S. McMath*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.,* by: *David A. Littleton,* for appellee.

A NDREE LAYTON ROAF, Judge. Regions Bank & Trust, N.A., serving as administrator of the estate of Victoria Ann Elder ("Elder"), appeals the grant of summary judgment in favor of Stone County Skilled Nursing Facility, Inc ("Stone County"). Elder argues on appeal that the circuit court erred in finding Stone County was entitled to summary judgment as a matter of law because it was not liable under a theory of either *respondeat superior* or negligent supervision for the actions of its employee. Because genuine issues of fact exist, we reverse.

A review of the evidence, in a light most advantageous to appellant, reveals the following. On Saturday, November 3, 1996, between the hours of 8 p.m. and 9 p.m., William McConnaughey, an employee of Stone County, sexually assaulted Victoria Elder, a quadriplegic accident victim, by placing his hand and fingers on and inside her genitalia while he was assigned to clean and change her.[1] McConnaughey's actions were observed by Marlie O'Dell Foster, another employee, who was assigned to work the three to eleven shift with McConnaughey. At the time of the incident, Foster had been working on the floor for approximately two weeks. Foster discussed the incident with a senior certified nurse, who told her to "wait to see if it happened again." Foster testified in her deposition that she felt uncomfortable with this response, and reported McConnaughey's behavior to Becky Diaz, the charge nurse. Diaz attempted to call Kathy Baldwin, the director of nursing and Vickie Sandage, the nurse administrator. Although she tried repeatedly, she was unable to contact either of them. Diaz did not contact the police, or call the Office of Long Term Care. Instead, Diaz came in Monday morning and reported the incident to Sandage, who reported the incident to Eva Appelgate, vice president of operations for Stone County. Appelgate instructed Sandage to get statements from everyone. Sandage did so, and also contacted Elder's father, Elder's physician, the Office of Long Term Care, and the police. McConnaughey was suspended, pending an investigation.

On March 12, 1998, Elder filed suit against Stone County, alleging that it was vicariously liable for McConnaughey's behavior, and liable for negligently hiring and supervising McConnaughey.

---

[1] Victoria Elder died on July 4, 1998, and appellant was appointed as administrator of her estate.

Stone County denied all of the allegations, and subsequently filed a motion for summary judgment with supporting affidavits, asserting that it was entitled to judgment as a matter of law. A hearing was held on September 7, 1999. Following the hearing, the circuit court granted Stone County's motion. In its order, the court relied on *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1987), as setting forth the test to determine when *respondeat superior* liability attaches. The court found that Stone County's affidavits established that it had no knowledge or indication that McConnaughey would act in the manner he did, and that McConnaughey's actions were outside his scope of duties as a certified nurse's assistant. The court also found that Stone County checked McConnaughey's personal references and the national abuse registry, and that Elder failed to prove that a further criminal background check would have indicated McConnaughey's propensity to commit sexual assault. Therefore, the court determined that Elder failed to meet proof with proof on the issue of *respondeat superior*. The court also found that there was no genuine issue of material fact that appellee knew, or in the exercise of ordinary care, should have known that McConnaughey's conduct would expose Elder to an unreasonable risk of harm for sexual assault. Again, the court noted that affidavits provided by Stone County established that it had no knowledge or information of any history of similar sexual misconduct by McConnaughey. Lastly, the court found that Stone County did not engage in willful or wanton behavior to substantiate a claim for punitive damages, and that Elder's claim for punitive damages was insufficient, as a matter of law.

■ ■ Rule 56 of the Arkansas Rules of Civil Procedure governs motions for summary judgment. Basically, Rule 56 dictates that the moving party bears the burden to prove, based on the pleadings, discovery responses, admissions, and any submitted affidavits, that no genuine issues of material fact exist for a trier of fact to resolve. Ark. R. Civ. P. 56. It is not necessary that a moving party file an affidavit in support of a motion for summary judgment, and affidavits filed in support of the motion are construed against the moving party. *Guthrie v. Kemp*, 303 Ark. 74, 78, 793 S.W.2d 782 (1990).

[3–5] The purpose of a summary judgment hearing is not to try the issues, but rather to determine if there are any issues to try. *Muddiman v. Wall*, 33 Ark. App. 175, 803 S.W.2d 945 (1991). The trial court must consider all proof in favor of the non-moving party. *Knowlton v. Ward*, 318 Ark. 867, 889 S.W.2d 721 (1994). Once the moving party proves there are no genuine issues, the burden shifts

to the non-moving party to set out specific facts that demonstrate there are genuine issues of trial. *Id.* On summary judgment appeal, we limit our review to the pleadings, affidavits, and other supporting documents filed by the parties in support of their arguments. *Earp v. Benton Fire Dep't,* 52 Ark. App. 66, 914 S.W.2d 781 (1996). We review all evidence in the light most favorable to the non-moving party, and only reverse the trial court when we determine that a material question of fact remains. *Keller v. Safeco Ins. Co. of Am.,* 317 Ark. 308, 877 S.W.2d 90. We need only decide if the grant of summary judgment was appropriate, considering whether the evidentiary items presented by the moving party in support of the motion left a material question of fact not answered. *Inge v. Walker,* 70 Ark. App. 114, 15 S.W.3d 348 (2000).

■ When considering if an employer is liable for the acts of its employee, Arkansas follows the doctrine of *respondeat superior. Porter v. Harshfield,* 329 Ark. 130, 948 S.W.2d 83 (1997). This doctrine assigns liability to expected acts that are incidental to the employee's duties, or that benefit the employer. *Id.* at 136, 948 S.W.2d at 86. In other words, liability attaches when an employee commits a foreseeable act "within the scope of his employment at the time of the incident." *Id.* at 137, 948 S.W.2d at 86. The scope of the employment includes acts done with the "object and purpose of the enterprise," and not acts that are strictly personal. *Id.*

■ Furthermore, an employer may be liable for a battery committed by an employee while acting within the scope of employment. 6 AM. JUR. 2D *Assault & Battery* § 111 (1999). However, to be within the scope of employment, the conduct must 1) be of the kind the employee is employed to perform; 2) occur substantially within the authorized time and space limits; and 3) be actuated, at least in part, by a purpose to serve the master.

■ In this regard the trial court correctly relied upon *Porter v. Harshfield, supra,* in granting Stone County's motion for summary judgment on the theory of *respondeat superior.* In *Porter,* the supreme court concluded that a radiology technician was not acting within the scope of his employment when he attempted to perform a sex act upon a patient while he was conducting an ultrasound examination of the patient's abdomen. The facts of *Porter* are analogous to this case in all material respects. We agree with the trial court that *Porter* is dispositive on the issue of *respondeat superior* and affirm on this ground.

■ Elder also claimed that Stone County negligently supervised McConnaughey. To recover under a theory of negligent supervision, a plaintiff must show that an employer knew, or through the exercise of ordinary care should have known, that its employee's conduct would subject third parties to an unreasonable risk of harm. *Sparks Reg'l Med. Ctr. v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998). Liability for negligent supervision differs from that of *respondeat superior*, because recovery for negligent supervision rests on the wrongful conduct of the employer, not the employee. *Id.* at 135, 976 S.W.2d at 396.

In the present case, the trial court found that Stone County presented affidavits of employees that established that it had no knowledge of information of any similar sexual misconduct by McConnaughey. While this information established a *prima facie* case for summary judgment entitlement, Elder met proof with proof that a genuine issue of material fact existed that Stone County negligently supervised McConnaughey, in the form of an affidavit by Pamela Taylor Smith, a health care consultant, whose practice focused on the care of the elderly and severely disabled persons. Smith's affidavit stated that Medicare and Medicaid require that Long Term Care facilities observe the work performance of nurse's aides, and that the facilities ensure that nurse's aides demonstrate competency in requisite skills. Smith noted that Stone County received numerous deficiencies in a March 1996 survey, including a failure to require aides to demonstrate skill competency, a failure to do aide background checks, and a cursory completion of orientation check-off lists. Smith observed that even though the March survey was done prior to Stone County's purchase of the home, most of the staff were the same, including the charge nurse and the director. Smith pointed to Ms. Appelgate's testimony that an LPN is required to supervise aides to make sure they learn all the necessary skills before they complete the course. Also the director of nursing stated that aides are "to complete the orientation check-off lists and sign." Smith noted that McConnaughey was not observed for a period of time by a charge nurse to document his skills, and that McConnaughey was left alone in a disabled patient's room with no supervision. Smith noted that McConnaughey was hired as a janitor, and then took a two-week course and test to become a nurse's aide. She stated that Appelgate testified that it was company policy to have male aides attend patients alone, even while still a student trainee. She also discussed management's delay in reporting the assault for more than twenty-two hours, despite a local rule of reporting within an hour; and the inability of the charge nurse to reach the director of nursing or the administrator to notify them of

the assault was indicative of general inattentiveness to proper nursing care and lack of personnel supervision.

In her affidavit, Smith opined that Stone County was negligent in permitting unaccompanied access to helpless female patients by male aides with little or no previous health care experience. She stated this policy was not in keeping with accepted nursing practice. Smith further opined that Stone County failed to supervise its aides properly, particularly those, such as McConnaughey, who had not been on the job long enough to establish a record of patient care and dependability. Smith referred to the following standard references in reviewing proper long-term care supervision procedures: Uphold and Graham, *Clinical Guidelines in Adult Health*; Lubkin, *Chronic Illness, Impact, and Intervention*; Hazard, *Principles of Geriatric Medicine and Gerontology*.

 Elder has met proof with proof that a genuine issue of material fact remains with regard to this theory. Therefore, we reverse only the trial court's decision to grant summary judgment on the theory of negligent supervision.

Affirmed in part, reversed in part and remanded.

STROUD, C.J., JENNINGS, BIRD, JJ., agree.

GRIFFEN and PITTMAN, JJ., concurring in part; dissenting in part.

WENDELL L. GRIFFEN, Judge, concurring in part; dissenting in part. Although I agree with the majority to reverse and remand regarding negligent supervision, I respectfully dissent from the majority regarding the issue of *respondeat superior*.

When considering if an employer is liable for the acts of its employee, Arkansas follows the doctrine of *respondeat superior*. *See Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997). This doctrine assigns liability to expected acts that are incidental to the employee's duties, or that benefit the employer. *See id.* at 136, 948 S.W.2d at 86. In other words, liability attaches when an employee commits a foreseeable act "within the scope of his employment at the time of the incident." *See id.* at 137, 948 S.W.2d at 86. The scope of employment includes acts done with the "object and purpose of the enterprise," and not acts that are strictly personal. *See id.*, 948 S.W.2d at 86.

In *Porter*, the appellee's radiology technician unzipped the appellant's pants, examined around his testicles, and performed oral sex on him during the course of a gallbladder ultrasound. Although Porter urged the court to analyze his case using a common carrier, job-created power, or reasonably incidental theory of liability, the court declined to do so. Instead, it chose to follow the theory of master-servant liability, which has been followed in Arkansas since 1910. *See Porter, supra*. The court then held that the employer was not liable because the technician's act of performing a homosexual assault on a patient was purely personal and not foreseeable. *See Porter, supra*.

The facts in the instant case are readily distinguishable from the facts presented in *Porter*. Unlike the radiology technician in *Porter*, a substantial portion of McConnaughey's job as a certified nurses' aide ("CNA") in appellee's long term care facility involved providing custodial care to patients, including the assigned duty of regularly washing and cleansing the genital area of female patients. While it is plainly beyond the scope of employment for a radiology technician to touch a male's genital area with his mouth while performing an ultrasound procedure of the patient's gallbladder, it is certainly within the scope of employment for a certified nurse's aide — of any gender — to clean and wash a person's genitals with his hands while providing custodial care. The factual inquiry is not simply whether such touching of the patient's genital area is within the scope of employment, but whether, given the plain proof that certified nurses' aides are charged with doing so, McConnaughey's conduct was "strictly personal."

It is also important to note that in *Porter*, there was no evidence of a custodial relationship. Here it is not disputed that Ms. Elder was an immobile quadriplegic in the complete custody of the defendant. Also, the patient in *Porter* was only under the control of the clinic momentarily and even then, he remained alert and ambulatory. Here, Ms. Elder was unable to control even her basic movements and was totally dependent on appellee for personal hygiene. While the technician in *Porter* was an experienced worker who was personally known to the physician and had worked in health care without blemish for over ten years, McConnaughey was a new hire with no health care experience who had previously worked as a janitor and reportedly lived in his car.

In *Life & Cas. Ins. Co. v. Padgett*, 241 Ark. 353, 407 S.W.2d 728 (1966), our supreme court held that a master is liable for the intentional torts of a servant when the servant's conduct is not

unexpectable in light of the servant's duties. *Padgett* involved an insurance agent who assaulted and beat a customer with a heavy stick of firewood after attempting to collect insurance premiums. The court held that it was not unforeseeable for a dispute to arise within the scope of the insurance agent's employment, which included collecting insurance premiums from customers. Here, McConnaughey was a CNA. His primary responsibilities included providing intimate, personal care to immobile patients. Clearly, it is not unforeseeable that a CNA charged by his employer with cleansing the genitalia of patients may abuse that responsibility.

Our supreme court again examined *respondeat superior* in *Gordon v. Planters & Merchants Bankshares, Inc.*, 326 Ark. 1046, 935 S.W.2d 544 (1996). There, a bank official improperly charged-back a check against his former partner's account because the official thought he was entitled to half of the check that was made payable to the partnership. Although the bank argued that *respondeat superior* did not apply because the official acted for his own personal pecuniary interest, our supreme court disagreed and determined that the official used his position at the bank to further his own purpose and acted within the scope of his employment when he caused the charge-back. Because the official was carrying out the "object and purpose of the enterprise," the court held that *respondeat superior* applied. It further observed that the president of the bank demonstrated a "conscious indifference" to the employee's acts by refusing to intervene in the matter and instructing the customer to resolve the matter directly with the employee.

Similar to the rationale expressed in *Planters*, it is not dispositive that McConnaughey's act of sexually manipulating Elders with his fingers may have been for his own sexual gratification. Rather, the issue is whether McConnaughey used his position as a CNA to further his purpose so as to warrant a finding that he acted within the scope of his employment when he sexually assaulted Elders under the pretext of cleaning her. The nursing home's policy of allowing male certified nurses' aides to attend immobile female patients and the significant lapse of time between Foster reporting the incident and the nursing home's investigation also raise genuine issues of fact as to whether "conscious indifference" or ratification occurred.

In sum, a genuine issue of fact exists as to whether McConnaughey's actions were a foreseeable act incident to his duties as a certified nurse or if they were "strictly personal." Although the trial court concluded that the affidavits provided by appellee established

that McConnaughey's actions were not within the scope of his duties as a CNA, and that appellee had no knowledge or indication that McConnaughey would act in the manner that he did, appellant met proof with proof with an affidavit by Pamela Taylor Smith, a health care consultant, whose practice focused on the care of elderly and severely disabled persons. Smith noted that it was appellee's policy to have male aides attend patients alone even while the male aides were still student trainees, and that the appellee's practice of permitting unaccompanied access to helpless female patients by male aides with little or no previous health care experience was not in keeping with accepted nursing practice. In view of Smith's affidavit, a genuine issue of material fact arose concerning whether McConnaughey's actions were foreseeable.

It is certainly foreseeable that a person with such direct and intimate access to helpless patients might act improperly, even if well trained and supervised. It is also foreseeable that the improper conduct could involve sexual misconduct or abuse. Where an employer permits such access by poorly trained, unsupervised, and unmonitored staff *as a matter of practice and policy* contrary to accepted clinical norms, I see no reason why these facts should not be considered by a trier of fact in determining whether to impose liability under ordinary *respondeat superior* analysis. We should not reject that conclusion merely because the same or similar facts also create a genuine issue of material fact concerning negligent supervision.

The purpose of a summary judgment hearing is not to try the issues, but rather to determine if there are any issues to try. *See Muddiman v. Wall*, 33 Ark. App. 175, 803 S.W.2d 945 (1991). We need only decide if the grant of summary judgment was appropriate, considering whether the evidentiary items presented by the moving party in support of the motion left a material question of fact not answered. *See Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). Appellant has met proof with proof that genuine issues of material fact remain as to *respondeat superior* and negligent supervision Therefore, I would reverse the trial court's decision to grant summary judgment on both theories.

I am authorized to state that Judge PITTMAN joins in this opinion.