EAST-HARDING, INC., and Robert East Company, Inc. *v.*
HORACE A. PIAZZA & ASSOCIATES

CA 01-1338 91 S.W.3d 547

Court of Appeals of Arkansas
Division III
Opinion delivered December 11, 2002

144

*Barber, McCaskill, Jones & Hale, P.A.*, by: *G. Spence Fricke* and *Cynthia J. Worthing*, for appellants.

*David H. Williams*, for appellee.

A NDREE LAYTON ROAF, Judge. This appeal is from a trial court's ruling on cross-motions for summary judgment. The trial court granted summary judgment to appellee, Horace A. Piazza & Associates (Piazza), an architectural firm, requiring East-Harding, Inc. (East-Harding), a contractor, to indemnify Piazza for its attorney fees incurred in the settlement of an injured construction worker's suit against appellants, appellee, and another firm. We reverse and remand for further proceedings.

Timothy Gault (not a party) suffered serious injuries in a construction accident when he fell from a spiral staircase that had been purchased from Duvinage Corporation. At the time of his injury, Gault was employed as a construction worker by Little Rock Electrical Contractors, Inc. (not a party), a subcontractor of East-Harding.[1] East-Harding was the general contractor of the construction project at the Wildwood Park for the Performing Arts (Wildwood). Piazza was the project architect. Gault brought suit against East-Harding, Piazza, and Duvinage Corporation. The suit, alleging causes of action for product liability and negligence,[2] was settled without a finding of fault on the part of either

---

[1] Appellant Robert East Co., Inc., was the predecessor entity of East-Harding, Inc., and the contractor prior to merging with Harding.

[2] The allegations against Piazza were for negligence in the installation, use, and design of the stairway, as well as failure to properly supervise the manufacturer of the stairs. The allegations against East-Harding were for its failure to maintain a proper and safe workplace, failure to warn of unsafe conditions, failure to inspect for safety violations, and failure to properly supervise the construction site workers.

East–Harding or Piazza.[3] Piazza filed a cross–complaint against East–Harding for breach of the contract between East–Harding and Wildwood, which provided that East–Harding shall maintain insurance covering Piazza. Piazza amended the cross–complaint to seek indemnity under the contract. The indemnity provision at issue is part of American Institute of Architects (AIA) document A117, 1987 edition, and provides:

> 14.12 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense if attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss of expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 14.12.

Paragraph 14.12.2 provides:

> The obligations of the Contractor under this Paragraph 14.12 shall not extend to the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, Construction Change Directives, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

---

[3] The amount of the settlement is not contained in the record. Piazza did not contribute to the settlement.

Piazza filed a motion for summary judgment on its cross-complaint for indemnification. East-Harding then filed a cross-motion for summary judgment contending that the above indemnification provision does not apply because paragraph 14.12.2 provides that its duty of indemnification did extend to Gault's complaint that Piazza itself was negligent. At the hearing on the cross-motions for summary judgment, the parties stipulated that there had not been a finding of fault on the part of either East-Harding or Piazza. East-Harding also argued that the "but only to the extent caused" language in paragraph 14.12 limits the scope of its liability only to that portion of "claims, damages, losses and expenses" caused by the negligence of East-Harding or those under its supervision. East-Harding further argued that, even though Piazza did not design the stairs, because they were a pre-fabricated kit, Piazza was nevertheless precluded from seeking indemnity because Piazza prepared or approved the design and drawings which included the specifications of the stairs. The trial court found that the indemnification provision applied, even without a finding of fault on East-Harding's part. The trial court also found that there was no evidence that Piazza was at fault. This appeal followed.

East-Harding argues (1) that the indemnity agreement required a finding of fault on East-Harding's part before the indemnity provision would apply; (2) that the exclusion for Piazza's negligence would preclude application of the indemnity provision; and (3) that the order entered by the trial court did not accurately reflect the trial court's ruling on the cross-motions for summary judgment. Essentially, the first two points ask the same question, *i.e.*, whether the trial court properly interpreted the indemnity provisions, and we will address it as one question. At oral argument, East-Harding abandoned the third point, and we need not address it.

Our court recently outlined the procedure regarding summary judgment in *Regions Bank & Trust, N.A. v. Stone County Skilled Nursing Facility, Inc.*, 73 Ark. App. 17, 38 S.W.3d 916 (2001). There, we stated:

The purpose of a summary judgment hearing is not to try the issues, but rather to determine if there are any issues to try. The trial court must consider all proof in favor of the non-moving party. Once the moving party proves there are no genuine issues, the burden shifts to the non-moving party to set out specific facts that demonstrate there are genuine issues for trial. On summary judgment appeal, we limit our review to the pleadings, affidavits, and other supporting documents filed by the parties in support of their arguments. We review all evidence in the light most favorable to the non-moving party, and only reverse the trial court when we determine that a material question of fact remains. We need only decide if the grant of summary judgment was appropriate, considering whether the evidentiary items presented by the moving party in support of the motion left a material question of fact not answered.

*Id.* at 21-23, 38 S.W.3d at 919 (citations omitted).

Indemnity arises by virtue of a contract and holds one liable for the acts or omissions of another over whom he has no control. *See Pickens-Bond Constr. Co. v. North Little Rock Elec. Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970). Contracts of indemnity are construed in accordance with our rules for the construction of contracts generally. *Nabholz Constr. Corp. v. Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995). The first rule of interpretation is to give to the language employed by the parties the meaning they intended. *Koppers Co. v. Missouri Pac. R.R. Co.*, 34 Ark. App. 273, 809 S.W.2d 830 (1991). Given the nature of indemnification, our courts have held that the language imposing indemnity must be clear, unequivocal, and certain. *Nabholz, supra.* For instance, in *Arkansas Kraft Corp. v. Boyed Sanders Construction Co.*, 298 Ark. 36, 764 S.W.2d 452 (1989), our supreme court interpreted an indemnity contract. The court noted as follows:

[A] subcontractor's intention to obligate itself to indemnify a prime contractor for the prime contractor's own negligence must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed. While no particular words are required, the liability of an indemnitor for the negligence of an indemnitee is an extraordinary obligation to assume,

and we will not impose it unless the purpose to do so is spelled out in unmistakable terms.

*Id.* at 39, 764 S.W.2d at 453.

The construction and legal effect of a written contract are to be determined by the court as a question of law, except where the meaning of the language depends on disputed extrinsic evidence. *Arkansas Rock & Gravel Co. v. Chris-T-Emulsion Co., Inc.*, 259 Ark. 807, 536 S.W.2d 724 (1976). Indemnity agreements are construed strictly against the party seeking indemnification. *See Potlatch Corp. v. Missouri Pac. R.R. Co.*, 321 Ark. 314, 902 S.W.2d 217 (1995).

We reverse the summary judgment because we believe that there are questions of fact that must be determined, that is, whether Gault's injuries were caused in whole or in part by the negligent acts or omissions of East–Harding or those for whose actions East–Harding may be responsible. It is this inquiry that determines whether East–Harding is obligated to indemnify Piazza. If the trial court determines that Gault's injuries are caused in whole or in part by East–Harding or those for whom it is responsible, a percentage of fault, if any, must be assigned to Gault, East–Harding, Piazza, and Duvinage, and East–Harding will be required to reimburse Piazza for East–Harding's percentage of the expenses and attorney fees.

In *Pickens-Bond Construction Co. v. North Little Rock Electric Co.*, *supra*, the court analyzed an overly-broad indemnity provision and ruled that the electric company, as subcontractor, agreed to indemnify Pickens–Bond, the general contractor, in any action for work–related damages, except those solely caused by Pickens–Bond's negligence. The pertinent indemnity language was: "He shall specifically and distinctly assume, and does assume, all risks of damage or injury *from whatever cause* to property or persons used or employed on or in connection with his work. . . ." *Id.* at 391, 459 S.W.2d at 551 (emphasis added). The trial court entered summary judgment for the electric company. The supreme court reversed, holding that a factual issue existed as to whether there was negligence on the part of Pickens–Bond that was the sole

proximate cause of the accident. The court held that, in the event of such negligence, Pickens-Bond could not recover under the indemnity contract. On remand, at the close of the evidence, the trial court directed a verdict in favor of Pickens-Bond on the theory that the electric company had not met its burden of proving that Pickens-Bond was guilty of negligence that was the sole proximate cause of the explosion and injuries. The trial court was affirmed on appeal. *North Little Rock Elec. Co. v. Pickens-Bond Constr. Co.*, 253 Ark. 172, 485 S.W.2d 197 (1972).

Courts in other jurisdictions, considering indemnification provisions virtually identical to the one at issue in the present case, have agreed that the phrase "but only to the extent caused" expresses the intent to limit the indemnitor's liability to that portion of fault attributed to the indemnitor. *See, e.g., Braegelmann v. Horizon Dev. Co.*, 371 N.W.2d 644, 646 (Minn. Ct. App. 1985) (holding that "[t]he additional phrase 'to the extent caused' . . . suggests a 'comparative negligence' construction under which each party is accountable 'to the extent' their negligence contributes to the injury"). *See also, e.g., MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.*, 208 Mich. App. 340, 527 N.W.2d 79 (1995) (holding that the words "to the extent" meant that the indemnitor was only responsible for reimbursing the indemnitee for that portion of the indemnitee's liability which represented the indemnitor's negligence). In *Martin & Pitz Associates, Inc. v. Hudson Construction Services, Inc.*, 602 N.W.2d 805 (Iowa 1999), the Iowa Supreme Court held that the indemnity obligation of the AIA General Conditions did not provide indemnification for a claim against the architect alleging solely the negligence of the architect. Other cases adopting this view include *Hagerman Construction Corp. v. Long Electric Co.*, 741 N.E.2d 390 (Ind. Ct. App. 2000); *Buchanan v. Rentenbach Constructors, Inc.*, 922 S.W.2d 467 (Mo. Ct. App. 1996); *Dillard v. Shaunessy, Fickel & Scott Architects, Inc.*, 884 S.W.2d 722 (Mo. Ct. App. 1994) (applying Kansas law); *Mautz v. J.P. Patti Co.*, 298 N.J. Super. 13, 688 A.2d 1088 (App. Div. 1997); *Greer v. City of Philadelphia*, 568 Pa. 244, 795 A.2d 376 (2002).

In contrast, in *Oster v. Medtronic, Inc.*, 428 N.W.2d 116 (Minn. Ct. App. 1988), the court considered an indemnity agreement without the "but only to the extent" language and held that the indemnity obligation extended to all claims, including those caused by the party seeking indemnification.

 Piazza argues that Gault's complaint did not state a cause of action for architectural malpractice. However, the complaint did make allegations of negligent design, manufacture, and installation of the spiral staircase. In this case, Piazza was responsible for the approval of the specifications and design of the project; therefore, any claim of negligent design involving the staircase would necessarily be directed only at it or the manufacturer of the staircase, Duvinage. This is where paragraph 14.12.2 becomes applicable.

 East-Harding also argues that its duty to defend and indemnify Piazza did not arise because Gault's complaint included a *claim* against Piazza for professional negligence. We do not agree. Paragraph 14.12.2 of the indemnity clause excludes indemnification for "the *liability* of the Architect" (emphasis added) resulting from his professional negligence. Although Gault's principal *contention* against Piazza during trial may have been his professional negligence, the case settled without finding any party to be liable.

Our interpretation is consistent with the analysis of other jurisdictions that have considered identical language in construction indemnity agreements. In *Bartak v. Bell-Gallyardt & Wells, Inc.*, 473 F. Supp. 737 (D.S.D. 1979), *rev'd on other grounds*, 629 F.2d 523 (8th Cir. 1980), the district court was required to construe an indemnity provision without the "but only to the extent caused" language. In *Bartak*, the district court, in construing the exclusionary provision, held "that the intent of the parties to the contract was to forego any indemnification if the *liability* of the architect arose from the preparation of the drawings, designs and specifications." *Id.* at 740 (emphasis added). Because the jury assessed the architects' *liability* to plaintiffs at thirty-five percent, the court denied the architects' indemnity against the contractor,

but assessed costs of others against architects consistent with their thirty-five percent liability to plaintiffs. In other words, the architects were entitled to indemnification under this provision *unless* they were found liable. Similarly, in *Henningson, Durham & Richardson v. Swift Bros.*, 739 F.2d 1341 (8th Cir. 1984), the Eighth Circuit indicated that "resulting liability" as found by the jury would bar indemnification under this language. *Hillman v. Leland E. Burns, Inc.*, 209 Cal. App. 3d 860, 869, 257 Cal. Rptr. 535 (1989), and *McCarthy v. J.P. Cullen & Son Corp.*, 199 N.W.2d 362 (Iowa 1972), reached the same conclusion.

■ These cases interpret the language of the exclusion at issue here to indicate that it is a finding of liability, not merely a claim for negligence, that triggers the exclusion. Because the language at issue here is a standard provision in the industry, we believe that a consistent interpretation is appropriate.

■ Further, we note that an action for damages arising from the professional services of an architect rarely excludes *claims* of professional negligence. If we accept East-Harding's argument, that the indemnity provisions of the contract excluded all actions against the architect based on professional negligence claims regardless of the architect's *liability* therefor, we would essentially eliminate any scope for the indemnity agreement. It would be inapplicable if the standard claim of an architect's professional negligence was made and never resulted in establishment of the architect's liability. That result would violate the fundamental rule of construction that a contract must be interpreted so as to render it operative, reasonable, and capable of being effectuated. *Hillman, supra.*

Reversed and remanded.

HART and ROBBINS, JJ., agree.